[No. 6631–9–II.   Division Two.   December 19, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. BILL J. CASTO, *Appellant.*

*Steven R. Johnson,* for appellant (appointed counsel for appeal).

*Michael G. Spencer, Prosecuting Attorney,* and *H. Steward Menefee, Deputy,* for respondent.

PETRIE, J.—Bill J. Casto appeals his conviction of unlawful possession of a controlled substance, marijuana, under RCW 69.50.401. The issues on appeal are whether the trial court erred in finding the affidavit in support of the search warrant sufficient to establish probable cause, and in permitting expert testimony on marijuana identification. We find no error and affirm the conviction.

Sergeant Whelan of the Grays Harbor County Sheriff's Office applied for and received a warrant to search a particularly specified apartment in Aberdeen for marijuana, growing implements, and evidence of occupancy. His affidavit, the sole basis for issuing the warrant, gave the following facts and circumstances:

> Within the last 48 hours of the date on this affidavit the following events occurred. I have had contact with a confidential informant who told me that he/she knew the location of growing marijuana plants in Grays Harbor County, Washington. I was told that the confidential informant had seen them at an earlier date. I asked the confidential informant to enter the residence more fully described on page one of this affidavit and attempt to

purchase marijuana from the occupant. The confidential informant told me that this would be quit [*sic*] easy to do because he was welcome at the residence and would be able to enter and purchase marijuana. The confidential informant was provided with an amount of marked money before he entered the residence.

The confidential informant was followed to the residence described on page one of this affidavit in order to surveil [*sic*] him while he attempted to buy marijuana. Before the informant went into the residence he was thoroughly searched for the presence of marijuana or other drugs. No controlled substances were found on the informant's person. The informant's car was thoroughly searched for the presence of marijuana or other drugs before he was allowed into his car. No evidence of marijuana or other controlled substances was found in his car. The informant was under direct observation of officers at all times before he went to the residence and after he was searched. After the informant came out of the residence he got into his car and was kept under observation while he drove to a prearranged meeting place.

At the place arranged to meet the informant he turned over the remainder of the marked buy money along with a small amount of green vegetable matter which appeared to be marijuana. The informant told me that he had obtained the marijuana from the occupant of the apartment described on page one of this affidavit.

. . .

The informant told me that while inside the residence he observed growing marijuana plants. The plants were identified to the informant by the occupant as being marijuana. The information obtained by the informant from the occupant is reliable because the occupant would be unlikely to make incriminating statements unless they were true. The informant's reliability is verified by the fact that he went into the apartment after thoroughly being searched for the presence of controlled substances, and came out of the apartment in possession of a small amount of marijuana.

In executing the warrant, the officers seized marijuana plants, grow lights, other growing equipment, and books on marijuana cultivation. They also seized a rental agreement and utility bill naming Casto as the occupant. Marijuana

plants were found in every room of the residence except the bathroom. Elaborate systems of lights, fans, and reflector plastic had been constructed and were in use. When presented with the evidence, Casto, "the occupant," confessed to growing marijuana for his own use and for sale.

Casto contends, as at the suppression hearing, that the affidavit does not establish probable cause to believe the items specified would be found. The trial court found the affidavit legally sufficient to establish the reliability of the confidential informant and of his information, denying the motion to suppress.

At trial, a sheriff's sergeant testified to his identification of the plants seized as marijuana, to his qualifications as an expert, and to the procedures he employed. Casto asserts error in the sergeants's inability to show that the chemicals used in testing were of the correct kind and compounded in the proper proportions.

▪ Affidavits in support of search warrants are to be read as a whole, in a commonsense, nontechnical manner, with doubts resolved in favor of the warrant. *United States v. Ventresca*, 380 U.S. 102, 13 L. Ed. 2d 684, 85 S. Ct. 741 (1965); *State v. Partin*, 88 Wn.2d 899, 904, 567 P.2d 1136 (1977). A magistrate may issue a search warrant based on information received from an informant if the application establishes probable cause to believe that the items sought will be found in the place to be searched. "The support for issuance of a search warrant is sufficient if, on reading the affidavits, an ordinary person would understand that a violation existed and was continuing at the time of the application." *State v. Clay*, 7 Wn. App. 631, 637, 501 P.2d 603 (1972), *review denied*, 82 Wn.2d 1001 (1973). The appropriate analysis under the Washington Constitution, on which defendant relies, is the *Aguilar–Spinelli* 2–prong test. *State v. Jackson*, 102 Wn.2d 432, 688 P.2d 136 (1984); *Spinelli v. United States*, 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969); *Aguilar v. Texas*, 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964).

This requires that facts and circumstances be shown

from which the magistrate can, independently of the officer seeking the warrant, evaluate the informant's basis of knowledge *and* personal credibility or veracity. Both the reliability of the manner by which the information was acquired and the reliability of the informant must be shown in an effort to determine *present* reliability. *See, e.g., State v. Woodall,* 100 Wn.2d 74, 666 P.2d 364 (1983) (affidavit insufficient to establish veracity); *State v. Fisher,* 96 Wn.2d 962, 639 P.2d 743, *cert. denied,* 457 U.S. 1137 (1982); *State v. Partin, supra.* Conclusory assertions of reliability will not suffice; and our determination of reliability, though limited to the record, will not be limited by the officer's interpretation of any grounds for reliability asserted in the affidavit itself.

The first or "basis of knowledge" prong requires that the informant have personal knowledge of the facts asserted to establish probable cause. Hearsay may be used if it also establishes a basis of knowledge. The affidavit challenged here provides precisely the type of underlying factual data from which a magistrate could reasonably conclude that marijuana would be present. The informant said he had been in the residence and had seen growing marijuana plants before speaking with the officer and arranging the "buy." He said he was welcome and could enter again to buy marijuana, which he did. After the buy, he said he had again seen plants which the occupant identified as marijuana. The "basis of knowledge" prong was met, and the reliability of the information shown.

The challenge made to the second or "veracity" prong is a harder question. The magistrate must again receive factual data from which to determine the informant's present reliability. This is most commonly done by asserting an informant's "track record" for giving accurate information. An officer may swear that previous information given by this informant proved true and resulted in an arrest or conviction, or aided in an investigation. *See, e.g., Fisher,* 96 Wn.2d at 964; *Partin,* 88 Wn.2d at 903. Other methods of demonstrating present reliability may also be used.

██ In this case, we consider whether the controlled buy was sufficient to establish the informant's reliability, considering all the surrounding circumstances, and conclude that it was. In a "controlled buy," an informant claiming to know that drugs are for sale at a particular place is given marked money, searched for drugs, and observed while sent into the specified location. If the informant "goes in empty and comes out full," his assertion that drugs were available is proven, and his reliability confirmed. Properly executed, a controlled buy can thus provide the facts and circumstances necessary to satisfy *both* prongs of the test for probable cause. 1 W. LaFave, *Search and Seizure* § 3.3(b), at 512 (1978); *State v. Jansen,* 15 Wn. App. 348, 549 P.2d 32, *review denied,* 87 Wn.2d 1015 (1976).[1] *See State v. Steenerson,* 38 Wn. App. 722, 688 P.2d 544 (1984). Where the informant can also assert that more drugs are present, or where their presence can be presumed, probable cause may be found. LaFave, § 3.7, at 713; *State v. Helmka,* 86 Wn.2d 91, 93, 542 P.2d 115 (1975); *State v. Maffeo,* 31 Wn. App. 198, 202, 642 P.2d 404, *review denied,* 97 Wn.2d 1012 (1982).

We recently upheld a suppression order involving a search warrant based on a controlled buy. *State v. Steenerson, supra.* In that case we were concerned that a buy of itself might demonstrate an informant's cooperation, but not necessarily his credibility as a reporter of facts. Additional circumstances surrounding the buy may be needed to prove the informant reliable, especially when the buy is not associated with the defendant. We distinguished the situation where the informant had initiated the buy, as by making the assertion that drugs, the items to be seized, were

---

[1] Other jurisdictions have reached the same conclusion. *See, e.g., People v. Wares,* 129 Mich. App. 136, 341 N.W.2d 256 (1983), where the court concluded that under both the *Aguilar–Spinelli* line and *Illinois v. Gates,* 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983), a properly conducted controlled buy may be the "underlying circumstance" indicating credibility, and may, without more, establish probable cause; *State v. Arnold,* 214 Neb. 769, 336 N.W.2d 97 (1983), holding an informant making a successful controlled buy presumptively reliable.

present in the specified residence, the place to be searched. That is this case. As we stated then,

> if credibility can be established by a "track record" of an informant who has stated that incriminating material can be found in a particular place and the materials are then found, it should also suffice that the informant stated that a purchase may be made from a certain person and place and the purchase is in fact made thereafter.

*Steenerson,* 38 Wn. App. at 726; 1 W. LaFave, *Search and Seizure* § 3.3 (1978). This is because the informant's assertion that drugs will be found—the key to a search warrant—puts his own credibility on the line. By "coming out full," he proves the truth of his earlier assertion and establishes his own credibility, at the same time obtaining information for the law enforcement investigation. Such an informant has a reason to be reliable. As well, the search and surveillance conducted in a controlled buy remove much of the informant's opportunity to fabricate.[2]

The buy arranged here was properly conducted, with a search of the informant and his car, and continued surveillance of the informant before he entered and after he left the residence, until he handed over the marijuana. The only reasonable inference is that the marijuana was obtained in the residence, and arguments otherwise go to the weight of the evidence rather than the existence of probable cause; there is always some risk in the use of an informant, but some risk is necessarily permissible. The information on which the buy was arranged came from the informant. The contact built upon was his directly; the initial suggestion that a buy be made need not also be his. The informant's veracity is sufficiently established by the "controlled buy" based on the informant's own assertions and contacts. The showing of probable cause was sufficient under the *Aguilar–Spinelli* test.

---

[2]That an informant may be trying to win favorable treatment in his own case will usually strengthen the motivation to tell the truth, because the informant knows his own fate will be affected by the ability of law enforcement officials to rely on his information.

We find no merit in the defendant's contention that a deputy sheriff trained in marijuana identification must be able to testify to the nature and proportions of his testing chemicals. Chemical proof is not legally required. The deputy had successfully completed the State Crime Lab School for leaf marijuana identification, completed 88 successful identifications, and previously testified as an expert. He explained the procedures he used, and was more than adequately qualified to perform the tests and testify as an expert. The trial judge did not abuse his broad discretion to determine expert qualifications and permit expert testimony. *State v. Huelett,* 92 Wn.2d 967, 603 P.2d 1258 (1979); *State v. Parker,* 9 Wn. App. 970, 515 P.2d 1307 (1973).

Judgment affirmed.

PETRICH, C.J., and WORSWICK, J., concur.

Review denied by Supreme Court February 15, 1985.