FILED
COURT OF APPEALS
DIVISION II

2013 SEP -4 AM 10: 14

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42844-0-II |
| Respondent, | |
| v. | |
| | PUBLISHED IN PART |
| TAWANA LEA DAVIS, | OPINION |
| Appellant. | |

QUINN-BRINTNALL, J. — On September 23, 2011, a jury found Tawana Lea Davis guilty of three counts of unlawful delivery of a controlled substance (methamphetamine) within 1,000 feet of a school bus route stop or perimeter of a school ground, and unlawful use of a building for drug purposes.[1] Davis appeals, arguing that (1) her counsel was ineffective for failing to challenge the probable cause basis for the search warrant; (2) insufficient evidence supports the delivery of a controlled substance convictions; (3) insufficient evidence supports the school zone enhancements; (4) the trial court violated her right to present a complete defense by limiting certain testimony bearing on the credibility of the State's witnesses; (5) the trial court erred in allowing the presentation of impermissible hearsay evidence; and (6) RCW 69.53.010(1), the

---

[1] The jury also found Davis guilty of possession of a controlled substance, two counts of bail jumping, and one count of witness tampering. Davis does not challenge these convictions on appeal.

statute criminalizing use of a building for drug purposes, is unconstitutional as applied. Davis also argues, in a statement of additional grounds (SAG), that she received ineffective assistance of counsel because trial counsel failed to "object, request a mistrial, or address in any way" that a juror was nodding off during part of the trial; the Bremerton Police Department violated its own manual in handling the confidential informants in this case; and the cumulative error doctrine requires reversal. SAG at 2.

In the published portion of this opinion, we address Davis's argument that RCW 69.53.010(1) is unconstitutional as applied. Because RCW 69.53.010(1) does not apply to the circumstances alleged in this case, we vacate Davis's conviction for unlawful use of a building for drug purposes and remand for resentencing. The remaining issues are fact specific and are addressed in the unpublished portion of our opinion; because Davis received effective assistance of counsel, probable cause supported issuing the search warrant, sufficient evidence supports her delivery of a controlled substance convictions and school zone enhancements, and the remainder of Davis's arguments lack merit, we affirm Davis's unlawful delivery of a controlled substance convictions along with the school zone enhancements.

FACTS

BACKGROUND

In November 2010, Bremerton Police Detective Matthew Musselwhite was conducting several methamphetamine-related drug investigations in the City of Bremerton. As part of that effort, Musselwhite "intended on starting an investigation into Tawana Davis's methamphetamine distribution, specifically from the Chieftain Motel," where Davis lived and worked as a maid. 2 Report of Proceedings (RP) at 165-66. Musselwhite had Laura Sutton—a

confidential informant (CI) seeking a favorable recommendation from law enforcement on pending drug charges—arrange to purchase drugs from Davis.[2]

A little before noon on November 16, Detective Musselwhite and Bremerton Police Sergeant Randy Plumb met with Sutton at a secure location not far from the Chieftain. The officers conducted a "thorough search of Ms. Sutton's person, including her vehicle." 2 RP at 170. Although no contraband was found on Sutton, officers did locate "some drug paraphernalia and a small amount of methamphetamine in the car." 2 RP at 170. After briefly interviewing Sutton about these contraband items, the officers determined that Sutton was not "trying to hide anything" and decided to continue with the controlled buy. 2 RP at 172. Musselwhite gave Sutton $80 in prerecorded funds, discussed the plan for the buy, then told Sutton where to meet him and Plumb after "the deal was done." 2 RP at 173. At that point, Sutton left in her own vehicle.

The officers followed, keeping visual surveillance of Sutton's vehicle the whole time. After Sutton arrived at the Chieftain, Detective Musselwhite "saw her get out of her car and walk in the direction of the . . . hotel office" but then "lost sight of her after she walked towards the rooms." 2 RP at 174. According to Musselwhite, the Chieftain presented "a bit of a surveillance problem" because law enforcement could not come too close to the motel without residents alerting other residents of their presence. 2 RP at 179. Thus, although the officers could maintain visual surveillance of CIs' vehicles from afar, they could not see which motel rooms CIs entered to purchase drugs.

---

[2] By the time of trial, Sutton appears to have married and is sometimes referred to in the record as "Laura Sutton Husted."

After about 10 minutes, Sutton reemerged from the hotel and returned to the secure location. At the secure location, Sutton gave Detective Musselwhite "about a gram" of methamphetamine which she said she purchased from Davis. 2 RP at 180. After discussing the details of the transaction, Musselwhite thoroughly searched Sutton's person while Sergeant Plumb searched her vehicle. Neither search revealed hidden contraband or money. Next, Musselwhite showed Sutton a photomontage he had previously prepared. Sutton immediately selected a photo of Davis as the person she had purchased the drugs from.

On December 3, 2010, Sutton performed a similar controlled buy with Detective Musselwhite and Sergeant Plumb. During this second controlled buy, she purchased .4 grams of methamphetamine from Davis.

To strengthen his narcotics distribution cases, Detective Musselwhite often used "multiple informants" to purchase drugs from "the same target." 2 RP at 206. Thus, on December 30, 2010, Musselwhite asked another CI familiar with Davis, Robert White, to purchase methamphetamine from her. White was already working as a CI for Musselwhite in a different case and, in that case, "all of his information that was provided . . . was found to be true." 2 RP at 207.

On the day of this buy, Detective Musselwhite and Bremerton Police Detective Steven Polonsky met White at a secure location, searched his person and vehicle for contraband, and talked about the plan. Musselwhite gave White $130 of prerecorded money to purchase a "teener," or approximately 1.75 grams of methamphetamine. 2 RP at 210. As with the buys involving Sutton, the detectives lost sight of White shortly after he reached the Chieftain. White left the Chieftain only a few minutes after arriving. As he later told Musselwhite, rather than meeting Davis in her motel room as planned, the deal happened "hand-to-hand through a car

4

window in the parking lot of the motel" because Davis was leaving as White arrived. 2 RP at 213.

After following White back to the secure location, Detectives Musselwhite and Polonsky searched White's person and vehicle, finding no contraband. White gave Musselwhite a baggie of what appeared to be imitation narcotics. The officers confronted White but he maintained that because the buy happened so quickly (and not in Davis's motel room as expected), he did not realize that the substance was fake. White told Musselwhite that during the next controlled buy, he would confront Davis about the fact that "that stuff was bad." 2 RP at 212.

The final controlled buy took place on January 14, 2011. Detective Musselwhite and Sergeant Plumb used White as the CI for the buy. At the secure location, neither officer found contraband on White's person or in his car. Musselwhite "planned to use a video recording device on the informant during the course of the buy" because the equipment was available and after setting up the camera, gave White $140 in prerecorded funds.[3] 2 RP at 218. As before, Musselwhite observed White leave his vehicle at the Chieftain but lost sight of him before he entered Davis's room. Davis had apparently switched rooms since White was last at the hotel and, accordingly, White "had to go to the front desk and ask them because [he] couldn't find [Davis's] room." 3 RP at 407.

After about 10 minutes, White returned to his vehicle and left to meet Detective Musselwhite and Sergeant Plumb at the secure location. White gave Musselwhite the baggie "he said he obtained from [Davis] in the motel room in room 102" and Musselwhite "immediately

---

[3] Detective Musselwhite discovered, after the buy was complete, that the recording device had malfunctioned. But because the "device had done this before" due to "a wiring insulation problem," Musselwhite was confident that White did not intentionally damage or tamper with the video equipment. 2 RP at 223.

noticed that it was far less methamphetamine in the baggie" than was expected. 2 RP at 220. Plumb searched White's vehicle and, in the backseat, found "pieces of methamphetamine . . . laying openly on the backseat." 2 RP at 220. White denied knowing how the drugs got on the backseat but later admitted to dumping "some in the back for later." 3 RP at 417. White also told Musselwhite that upon Davis insisting that it was "the house rules," he dumped a little of the methamphetamine out on Davis's table for her boyfriend. 3 RP at 415. Because of this, White presumed that, unlike the first buy, the methamphetamine was real.

On January 18, following the CIs' three successful purchases of methamphetamine from Davis, Detective Musselwhite obtained a search warrant for the Chieftain's room 102. After knocking and announcing police presence multiple times, Musselwhite attempted unsuccessfully to open the door with a room key. After that, he "breached the door by kicking it, entered, and contacted Ms. Davis." 2 RP at 233. After reading Davis her *Miranda*[4] rights, Musselwhite had a conversation with her in which she acknowledged her actions in distributing and selling methamphetamine.

As Detective Musselwhite spoke with Davis, other officers searched her motel room. They found "some drug paraphernalia, some digital scales, packaging materials, unused packaging materials, some used packaging materials that had residue in them that appeared to be methamphetamine residue, [and] some other items that are associated with methamphetamine distribution and usage." 3 RP at 251. Davis admitted that all of the items were hers. After the conversation, Davis "was transported to the Kitsap County Jail and booked for delivery of methamphetamine." 3 RP at 264.

---

[4] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

No. 42844-0-II

PROCEDURE

The State charged Davis by information with three counts of unlawful delivery of a controlled substance (methamphetamine) within 1,000 feet of a school bus route stop or perimeter of a school ground, one count of delivery of a substance in lieu of a controlled substance, and one count of unlawful use of a building for drug purposes. RCW 69.50.401(2)(b), .435(1)(c)-(d); RCW 69.50.4012; RCW 69.53.010(1). Davis pleaded not guilty to all of the charges.[5]

On September 15, 2011, the trial court held a CrR 3.5 hearing. The trial court ruled that Detective Musselwhite appropriately advised Davis of her *Miranda* rights and that Davis's post-*Miranda* statements to Musselwhite were made in a knowing, voluntary, and intelligent fashion. Davis did not request a CrR 3.6 hearing or move to have any of the physical evidence collected from the controlled buys or her motel room excluded from trial.

Trial began on September 19. Detectives Musselwhite and Polonsky, Sergeant Plumb, Sutton, and White testified as to the events described above. A Washington State Patrol Crime Laboratory forensic scientist testified that both purchases made by Sutton contained methamphetamine, that one of the two purchases made by White contained methamphetamine, and that a number of the items located in Davis's motel room contained methamphetamine. Additionally, the State presented evidence that the Chieftain was within 1,000 feet of a school, the West Sound Technical Skills Center, and a Bremerton School District bus stop.

---

[5] The State also charged Davis with one count of unlawful possession of a controlled substance (methamphetamine), and (later) two counts of bail jumping and one count of witness tampering. RCW 69.50.4013; RCW 9A.76.170; RCW 9A.72.120. The jury convicted Davis of these charges and, as noted earlier, she has not challenged them on appeal.

7

On September 23, the jury returned its verdict, finding Davis guilty of three counts of delivering a controlled substance (methamphetamine) within 1,000 feet of a school ground or bus route stop, one count of possession of a controlled substance (methamphetamine), and one count of unlawful use of a building for drug purposes. The jury acquitted Davis of the delivery in lieu of a controlled substance charge.[6] At sentencing, in light of Davis's "extensive criminal history," offender score of 14, and "attempt to influence a witness not to appear," the trial court sentenced Davis to the top of the standard range, 120 months.[7] RP (Nov. 18, 2011) at 14. Davis now appeals.

## DISCUSSION

### USE OF A BUILDING FOR DRUG PURPOSES

Davis argues that the statute criminalizing use of a building for drug purposes, RCW 69.53.010, is unconstitutionally vague. We disagree with Davis's vagueness challenge. But we conclude that—based on its plain language—the statute is inapplicable to the facts of Davis's case as alleged and we reverse Davis's conviction for unlawful use of a building for drug purposes.

---

[6] Davis challenges the sufficiency of the evidence related to this charge, presented as count III in the seconded amended information. Although the jury acquitted Davis of this charge, making such a challenge moot, some confusion exists in the trial court's judgment and sentence. Rather than keep the numbering used in the second amended information and jury verdicts, the trial court omitted the delivery in lieu of a controlled substance charge and renumbered the remaining counts (what would have been counts IV through IX) as counts III through VIII. On remand, the trial court should correct the judgment and sentence to alleviate this confusion.

[7] The exact sentence entails Davis serving 96 months, concurrently, on each delivery of a controlled substance conviction plus three 24-month enhancements (for the school zone violations) served concurrently. Davis's other sentences run concurrently to the delivery of a controlled substance sentences. The maximum sentence for delivery of a controlled substance is 120 months, the same as the top end of the standard range in this case. RCW 69.50.401(2)(b).

Our review of the constitutionality of a statute is de novo. *In re Det. of Keeney*, 141 Wn. App. 318, 323, 169 P.3d 852 (2007). We presume that statutes are constitutional, and a defendant who challenges a statute as unconstitutionally vague must prove vagueness beyond a reasonable doubt. *State v. Watson*, 160 Wn.2d 1, 11, 154 P.3d 909 (2007). For statutes not involving First Amendment rights, we evaluate a vagueness challenge by examining the statute as applied under the particular facts of the case. *Watson*, 160 Wn.2d at 6 (quoting *State v. Coria*, 120 Wn.2d 156, 163, 839 P.2d 890 (1992)). A statute is void for vagueness if (1) it does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed or (2) it does not provide ascertainable standards of guilt to protect against arbitrary enforcement. *Watson*, 160 Wn.2d at 6 (quoting *State v. Williams*, 144 Wn.2d 197, 203, 26 P.3d 890 (2001)).

RCW 69.53.010(1) provides,

> It is unlawful for any person who has under his or her management or control any building, room, space, or enclosure, either as an owner, lessee, agent, employee, or mortgagee, to knowingly rent, lease, or make available for use, with or without compensation, the building, room, space, or enclosure for the purpose of unlawfully manufacturing, delivering, selling, storing, or giving away any controlled substance under chapter 69.50 RCW, legend drug under chapter 69.41 RCW, or imitation controlled substance under chapter 69.52 RCW.

Here, Davis argues that "it is not reasonable to suppose that the Legislature intended to increase the penalty for drug offenses committed in the privacy of a defendant's own room rather than elsewhere." Br. of Appellant at 28. This argument fails to establish either that RCW 69.53.010(1) is insufficiently definite such that ordinary people cannot understand what conduct it proscribes or that the statute provides no ascertainable standards of guilt. *Watson*, 160 Wn.2d at 6. Accordingly, Davis's contention that the statute is unconstitutionally vague on its face lacks merit.

Nevertheless, our de novo review of the statute establishes that it is inapplicable to the facts of this case. At trial, the State had to establish that Davis knowingly provided a space under her management or control as "an owner, lessee, agent, employee, or mortgagee," *to others* for storing, manufacturing, selling, or delivering drugs.[8] RCW 69.53.010(1). Although the evidence clearly establishes that Davis worked at the Chieftain and sold drugs from the living quarters on the premises provided as part of her compensation, the record does not establish that Davis managed or controlled any portion of the motel other than the room she herself earned as wages from her position as a maid or that she knowingly made her room available for other people to use, store, or sell drugs.

Very few Washington cases have addressed the "drug house" statute, but all those that have involve situations where someone who manages or controls a building knowingly allows someone else to use the building to sell, manufacture, or store drugs. *State v. Sigman*, 118 Wn.2d 442, 444, 826 P.2d 144 (1992); *State v. Bryant*, 78 Wn. App. 805, 807, 901 P.2d 1046 (1995) (homeowner knowingly allowed a tenant to grow marijuana in the home); *State v. Roberts*, 80 Wn. App. 342, 356 n.14, 908 P.2d 892 (1996) ("Roberts was not charged with violating either of Washington's 'crack house' statutes. . . . A landlord violates RCW 69.53.010(1) by knowingly acquiescing in such activity by a tenant or subtenant.").

The plain language of RCW 69.53.010(1) is clear. The legislature intended to punish those managing or controlling property who allowed renters, lessees, etc., to manufacture, sell, store, or deliver drugs from the property with their knowledge. Here, nothing established that

---

[8] After oral argument, we requested supplemental briefing on whether RCW 69.53.010(1) requires the State to establish that a defendant knowingly provided a space under her management or control to someone else to store, manufacture, or sell drugs. In its supplemental brief, the State concedes that this is a correct interpretation of the statute.

No. 42844-0-II

Davis acted as a landlord or, herself, allowed others to deal drugs from a space of which she maintained control.[9]  Accordingly, we vacate Davis's conviction for violation of RCW 69.53.010(1) and remand to the trial court for resentencing.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

INEFFECTIVE ASSISTANCE OF COUNSEL

Davis argues that she received ineffective assistance of counsel because her trial counsel failed to challenge the probable cause basis for the search warrant.  Because the record reflects that probable cause supported issuing the search warrant, any challenge below would have been fruitless.  Accordingly, Davis fails to establish that her counsel's performance prejudiced her and her ineffective assistance claim fails.[10]

---

[9] The State argues that because Davis told Detective Musselwhite at the time of her arrest that she was working with Bernard Lee, her boyfriend, to sell drugs, sufficient evidence existed for the jury to conclude that she violated the statute.  Contrary to its argument in supplemental briefing, the State did not argue this in its explanation of the jury instructions during closing argument. *Cf. State v. Holt*, 56 Wn. App. 99, 783 P.2d 87 (1989), *review denied*, 114 Wn.2d 1022 (1990).

[10] Davis also attempts to argue for the first time on appeal that insufficient evidence supports the probable cause basis for the search warrant.  This is an incorrect understanding of the law.  First, Washington decisions have long held that a defendant may not raise an evidentiary suppression issue for the first time on appeal if he or she has failed to preserve the issue by not challenging the evidence at trial. *See, e.g., State v. Lee*, 162 Wn. App. 852, 857, 259 P.3d 294 (2011), *review denied*, 173 Wn.2d 1017 (2012); *see also State v. Tarica*, 59 Wn. App. 368, 372, 798 P.2d 296 (1990), *overruled on other grounds by State v. McFarland*, 127 Wn.2d 322, 899 P.2d 1251 (1995); *State v. Mierz*, 72 Wn. App. 783, 789, 866 P.2d 65, 875 P.2d 1228 (1994), *aff'd*, 127 Wn.2d 460, 901 P.2d 286 (1995).  Accordingly, this issue is not separately preserved and is addressed solely in the context of Davis's ineffective assistance of counsel claim.  Second, Davis confuses the test this court applies for determining whether a magistrate/judge has abused his or her discretion in issuing a search warrant based on the tip of a CI (whether a CI's basis of knowledge and veracity have been established such that probable cause establishes a reasonable

11

No. 42844-0-II

To prevail on her ineffective assistance of counsel claim, Davis must show both deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Counsel's performance is deficient if it falls below an objective standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705-06, 940 P.2d 1239 (1997), *cert. denied*, 523 U.S. 1008 (1998). Our scrutiny of counsel's performance is highly deferential; we strongly presume reasonableness. *State v. McFarland*, 127 Wn.2d 322, 335-36, 899 P.2d 1251 (1995). To rebut this presumption, a defendant bears the burden of establishing the absence of any "'conceivable legitimate tactic explaining counsel's performance.'" *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)). To establish prejudice, a defendant must show a reasonable probability that the outcome of the trial would have differed absent the deficient performance. *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

To establish that counsel was ineffective for failing to challenge the probable cause basis of the search warrant, Davis must show that there is a reasonable probability that the outcome of her trial would have differed had trial counsel made such a challenge. *Thomas*, 109 Wn.2d at 226. Because any such challenge would have been futile, Davis's argument fails.

---

inference that criminal activity or contraband exist at a certain location) with this court's test for reviewing the sufficiency of the evidence (whether any rational trier of fact would find that the facts, taken in the light most favorable to the jury's verdict, support the conviction). Essentially, Davis asks this court to reweigh the evidence and conclude that both CIs in this case are not credible and, in result, this court should suppress all evidence obtained with help of the CIs. But on appeal, a reviewing court does not weigh evidence or make credibility determinations. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

12

No. 42844-0-II

Appellate courts generally review a magistrate or judge's decision to issue a search warrant for an abuse of discretion. *State v. Maddox*, 152 Wn.2d 499, 509, 98 P.3d 1199 (2004). Great deference is given to the probable cause determination of the issuing judge or magistrate. *State v. Young*, 123 Wn.2d 173, 195, 867 P.2d 593 (1994). However, as the Washington Supreme Court explained in *State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008), while appellate courts "defer to the magistrate's determination, the trial court's assessment of probable cause is a legal conclusion we review de novo."

Before a magistrate issues a search warrant, there must be an adequate showing of "'circumstances going beyond suspicion and mere personal belief that criminal acts have taken place and that evidence thereof will be found in the premises to be searched.'" *State v. Seagull*, 95 Wn.2d 898, 907, 632 P.2d 44 (1981) (quoting *State v. Patterson*, 83 Wn.2d 49, 58, 515 P.2d 496 (1973)). Probable cause for a search "requires a nexus between criminal activity and the item to be seized and between that item and the place to be searched." *Neth*, 165 Wn.2d at 183.

And "when the existence of probable cause depends on an informant's tip, the affidavit in support of the warrant must establish the basis of the informant's information as well as the credibility of the informant." *State v. Ibarra*, 61 Wn. App. 695, 698, 812 P.2d 114 (1991) (citing *State v. Jackson*, 102 Wn.2d 432, 433, 688 P.2d 136 (1984); *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964)). Generally, both prongs of the test must be present to establish probable cause. *Jackson*, 102 Wn.2d at 437. As the *Jackson* court explained,

> The two prongs of the *Aguilar-Spinelli* test have an independent status; they are analytically severable and each insures the validity of the information. The officer's oath that the informant has often furnished reliable information in the past establishes general trustworthiness. While this is important, it is still necessary that the "basis of knowledge" prong be satisfied—the officer must

13

explain how the informant claims to have come by the information in this case. The converse is also true. Even if the informant states how he obtained the information which led him to conclude that contraband is located in a certain building, it is still necessary to establish the informant's credibility.

102 Wn.2d at 437.

Here, the affidavit of probable cause seeking a search warrant for Davis's motel room satisfied both prongs of the *Aguilar-Spinelli* test as to White and Sutton and, in result, clearly established probable cause for issuing the search warrant.

Davis concedes that Detective Musselwhite's affidavit established White's basis of knowledge. Davis does not question Sutton's basis of knowledge. Nevertheless, in the search warrant affidavit, Musselwhite stated that Sutton twice purchased methamphetamine from Davis in room 108. Moreover, the affidavit stated that Sutton had a criminal history consisting of multiple prior drug convictions adding further weight to her basis of knowledge of Bremerton's methamphetamine culture. These facts sufficiently establish Sutton's basis of knowledge and, as previously noted, Davis concedes White's basis of knowledge.

The veracity prong of the *Aguilar-Spinelli* test can be established by showing that the CI provided accurate information to the police in the past. *State v. Fisher*, 96 Wn.2d 962, 965, 639 P.2d 743, *cert. denied*, 457 U.S. 1137 (1982). Detective Musselwhite's affidavit established that White had previously "conducted multiple successful controlled buys of methamphetamine in the recent past" and "successfully completed one case for [Musselwhite's unit] resulting in felony charges being filed against multiple subjects." Clerk's Papers at 265. Accordingly, the affidavit for probable cause established White's veracity.

A successful "track record" as a police informant, however, is not the only method of demonstrating the present reliability of a CI. *State v. Casto*, 39 Wn. App. 229, 233, 692 P.2d 890

14

(1984), *review denied*, 103 Wn.2d 1020 (1985). Instead, successful controlled buys may themselves be "sufficient to establish the informant's reliability." *Casto*, 39 Wn. App. at 234. As the *Casto* court explained,

> In a "controlled buy," an informant claiming to know that drugs are for sale at a particular place is given marked money, searched for drugs, and observed while sent into the specified location. If the informant "goes in empty and comes out full," his assertion that drugs were available is proven, and his reliability confirmed. Properly executed, a controlled buy can thus provide the facts and circumstances necessary to satisfy *both* prongs of the test for probable cause. 1 W. LaFave, *Search & Seizure* § 3.3(b) at 512 (1978); *State v. Jansen*, 15 Wn. App. 348, 549 P.2d 32, *review denied*, 87 Wn.2d 1015 (1976).

39 Wn. App. at 234.

As Detective Musselwhite explained in his affidavit for probable cause, Sutton successfully performed two controlled buys from Davis.[11] Accordingly, the affidavit established Sutton's present reliability.

In light of both prongs of the *Aguilar-Spinelli* test being met as to each CI, the magistrate did not abuse her discretion in correctly concluding that probable cause supported issuing a search warrant in this instance: three controlled buys of methamphetamine established a reasonable inference that Davis would continue to distribute narcotics from her motel room in the future and that contraband may exist in her motel room. *In re Pers. Restraint of Yim*, 139

---

[11] Davis argues at length that the "protocol employed in these buys was inherently unreliable" because officers lost sight of the CIs for a time while they were in the Chieftain. Br. of Appellant at 4. She argues that pursuant to *State v. Maddox*, 116 Wn. App. 796, 803, 67 P.3d 1135 (2003), *aff'd*, 152 Wn.2d 499, 98 P.3d 1199 (2004), "the police must at minimum observe the informant actually enter and leave the buy location." Br. of Appellant at 5. But this is a misstatement of the law: although this court mentioned in *Maddox* that the police corroborated a controlled buy by "searching the informant before he went into the house, watching him as he entered and returned, and searching him afterward," at no point in the opinion do we state that police *must* witness an informant enter and exit a suspect's door. 116 Wn. App. at 803. Research reveals that no court, in Washington or elsewhere, has ever established so stringent a requirement to establish a probable cause basis for issuing a search warrant.

Wn.2d 581, 594, 989 P.2d 512 (1999). Moreover, because the record establishes that probable cause supported issuing the search warrant, any challenge to the warrant by trial counsel would have been unsuccessful. Accordingly, we conclude that Davis's claim of ineffective assistance on this ground necessarily fails. *Thomas*, 109 Wn.2d at 226.

SUFFICIENCY OF THE EVIDENCE

Davis next argues that insufficient evidence supports her convictions for delivery of methamphetamine and the jury's special verdict findings that she committed these crimes within 1,000 feet of a school bus route stop or school ground. Because sufficient evidence supports Davis's delivery convictions and the jury's school zone findings, we disagree.

A.     STANDARD OF REVIEW

Evidence is sufficient if, when viewed in a light most favorable to the jury's verdict, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. Circumstantial and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). Our role is not to reweigh the evidence and substitute our judgment for that of the jury. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). Instead, because they observed the witnesses testify first hand, we defer to the jurors' resolution of conflicting testimony, evaluation of witness credibility, and decisions regarding the persuasiveness and the appropriate weight to be given the evidence. *See State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533, *review denied*, 119 Wn.2d 1011 (1992).

B.    DELIVERY OF A CONTROLLED SUBSTANCE

To convict Davis of unlawful delivery of a controlled substance (methamphetamine), the State had to prove beyond a reasonable doubt that Davis (1) knowingly delivered (2) a controlled substance.  RCW 69.50.401(1), (2)(b).

Here, the State presented evidence that Davis delivered methamphetamine, as confirmed by crime lab testing, to White on one occasion and Sutton on two occasions; for at least the final delivery to White, a reasonable inference establishes that Davis knew the methamphetamine was real as she asked White to leave some for her boyfriend to use; and after Detective Musselwhite read Davis her *Miranda* rights, she admitted that she and her boyfriend were working together selling methamphetamine.  This evidence, when viewed in the light most favorable to the jury's verdict, clearly permits any rational trier of fact to find the essential elements of delivery of a controlled substance beyond a reasonable doubt.  Accordingly, we conclude that Davis's insufficient evidence argument lacks merit.

C.    SCHOOL ZONE ENHANCEMENTS

Davis claims that the evidence was insufficient to establish that she delivered a controlled substance within 1,000 feet of a designated school bus route stop or school ground.  We affirm the jury's special verdicts.

Pursuant to RCW 69.50.435(1), a defendant who delivers a controlled substance within 1,000 feet of a school ground is subject to a sentence enhancement.  Here, the State presented uncontroverted evidence that Davis's room at the Chieftain was within a 1,000 feet of the West Sound Technical Skills Center, as measured by Detective Musselwhite with a calibrated

17

measuring wheel. Accordingly, sufficient evidence supports the jury's special verdict findings and we affirm the sentencing enhancements.[12]

RIGHT TO PRESENT A COMPLETE DEFENSE

Davis next asserts that the trial court violated the confrontation clause by limiting certain testimony that would reveal White's and Sutton's biases. Because this assertion materially misrepresents the record and lacks merit, we disagree.

Although Davis argues that the "dispositive" issue before this court concerns the confrontation clause, ultimately she asks this court to review the trial court's ruling on whether evidence of Sutton's and White's activities *before* and *after* the controlled buys should have been admissible at trial. We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995). Abuse exists when the trial court's exercise of discretion is "manifestly unreasonable or based upon untenable grounds or reasons." *Powell*, 126 Wn.2d at 258. Similarly, a court's limitation on the scope of cross-examination will not be disturbed unless it is the result of manifest abuse of discretion. *State v. Campbell*, 103 Wn.2d 1, 20, 691 P.2d 929 (1984), *cert. denied*, 471 U.S. 1094 (1985).

A. SUTTON

Davis states that the trial court excluded evidence that Sutton

was dealing drugs during the entire period encompassed by the alleged Davis buys. That her best friend, Barbara Ivy, lived at the Chieftain and was getting drugs for her. That Sutton both bought and sold from Ivy during the Davis buy period. That Sutton bought drugs from Ivy at the Chieftain motel before going to Davis's room. And that she did drugs with Ivy at the Chieftain later that night.

---

[12] Davis appears to argue that the State must prove that if the school ground in question is not also within 1,000 feet of a school bus stop *serving the same school* within *unobstructed walking distance of the crime scene*, insufficient evidence supports this sentencing enhancement. This interpretation of RCW 69.50.435 is inconsistent with the canons of statutory construction.

Br. of Appellant at 19 (citations omitted). She also states that the trial court excluded evidence that "Sutton and her husband visited Davis's motel room during the buy period, bought drugs from her and used with her there," and that the trial court ruled that Davis could not cross-examine Sutton about the contraband found in her car when she arrived at the first controlled buy. Br. of Appellant at 19.

These statements materially misrepresent the record. First, no evidence in the record supports Davis's assertion that Sutton bought drugs from Ivy before going to Davis's room. Sutton testified that she did not see Ivy on either day she performed a controlled buy. Second, the record also does not support Davis's contention that Sutton and Ivy ingested drugs at the Chieftain on the night of any of the controlled buys. Third, contrary to Davis's assertion, the trial court allowed the evidence she claims was excluded to be presented at trial:

> In reviewing the notes and the testimony, the court is going to allow for both [parties'] information -- basically everything that occurred between 11/16 and 12/3 [the days of the first and last controlled buys] is coming in. So I'll modify my ruling. . . . I think the jury is entitled to hear it all.

2 RP at 123-24. Accordingly, Sutton testified on direct that she and her husband bought drugs from Davis between the two controlled buys and that she did drugs in Davis's room, that she bought drugs from Ivy during the period she was acting as a CI, and that she sold drugs during the period in question. The trial court allowed Davis to cross-examine Sutton on all these issues as well as on the issue of the contraband found in Sutton's car on the day of the controlled buy.

The only issues on which the trial court limited testimony involved the exact length of Sutton's sentence (although it did allow Davis to characterize the sentence as being "lengthy") and the fact that Sutton was arrested shortly after the second controlled buy. Davis fails to explain how limiting evidence related to these topics prejudiced her or why the trial court's

19

decision to limit this evidence constituted an abuse of discretion. Moreover, in light of Davis's admissions, any error in excluding details of Sutton's sentence was harmless. *See State v. Portnoy*, 43 Wn. App. 455, 463-64, 718 P.2d 805, *review denied*, 106 Wn.2d 1013 (1986).

B.    WHITE

Davis further argues that the trial court erred in excluding evidence that White attempted to steal drugs during a controlled buy that occurred in a subsequent investigation unrelated to Davis's case. She fails to argue how the trial court's decision constituted an abuse of discretion and cites no authority to support her argument. We refrain from addressing this argument. RAP 10.3(a)(6).

IMPERMISSIBLE HEARSAY EVIDENCE

Davis next argues that the trial court committed reversible error in allowing Detective Musselwhite to testify that Sutton told him that Davis had methamphetamine for purchase. Although this statement was hearsay, as the State correctly concedes, any error in allowing it was harmless.

We will not reverse a conviction due to an error in admitting evidence that does not prejudice the defendant. *State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997). And where the error is from violation of an evidentiary rule, appellate courts apply "the rule that error is not prejudicial unless, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred." *State v. Tharp*, 96 Wn.2d 591, 599, 637 P.2d 961 (1981). "The improper admission of evidence constitutes harmless error if the evidence is of minor significance in reference to the overall, overwhelming evidence as a whole." *Bourgeois*, 133 Wn.2d at 403.

No. 42844-0-II

The evidence Davis challenges consists solely of the following testimony elicited from Detective Musselwhite on direct examination:

> Q.  What did Ms. Sutton tell you with respect to setting up this controlled buy --
> A.  She told me --
> Q.  -- limited to that.
> A.  She told me she called [Davis] and asked if she could purchase -- if she had methamphetamine available for purchase and if she was -- [Davis] told her that there was methamphetamine available for purchase.

2 RP at 166.

Although this statement is a statement made out of court and used as "evidence to prove the truth of the matter asserted," ER 801(c), it was essentially cumulative of Sutton's testimony and its significance was minor. Sutton testified that she purchased methamphetamine from Davis on two separate occasions. In addition, Detective Musselwhite testified as follows:

> I asked [Davis] if she and Bernard Lee were working together to distribute the methamphetamine, or if it was something he was doing and maybe she was doing it kind of against her will or just because this was her boyfriend if he was making her do it. And she said that they [were] working together. . . .
>
>      . . . .
>      . . . [S]he did tell me that she was distributing along with Bernard Lee.

3 RP at 248.[13]

While Davis expresses concern that jurors may have viewed Detective Musselwhite's statement about what Sutton said to him "as substantive evidence of guilt," Br. of Appellant at 22, Davis's own admissions to Musselwhite provided overwhelming evidence, corroborated by Sutton's and White's testimony, to support her delivery convictions. Accordingly, the admission

---

[13] The trial court ruled in its CrR 3.5 hearing that Davis's statements to Detective Musselwhite were made knowingly, voluntarily, and intelligently, and would be admissible at trial.

of Musselwhite's brief testimony that Davis told Sutton she had drugs to sell, though inadmissible hearsay, was harmless.

SAG ARGUMENTS

### A. INEFFECTIVE ASSISTANCE

In her SAG, Davis argues that she received ineffective assistance of counsel because "[t]rial counsel failed to object, request a mistrial, or address in any way that juror #5 was repeatedly nodding off during trial." SAG at 2. To establish ineffective assistance of counsel, Davis needs to show that had trial counsel requested that juror 5 be replaced, there is a reasonable probability that the outcome of her trial would have differed. *Thomas*, 109 Wn.2d at 226. Here, the record reflects that a brief discussion occurred between the trial court and counsel concerning a juror nodding off on the fourth day of trial. There is no evidence that the juror actually fell asleep or was unfit to serve as a juror through the remainder of Davis's trial.[14] Moreover, under RCW 2.36.110, the trial court has a duty "to excuse from further jury service any juror, who in the opinion of the judge, has manifested unfitness as a juror by reason of . . . inattention . . . or by reason of conduct or practices incompatible with proper and efficient jury service." Davis fails to argue—and nothing in the record reflects—that the trial court abused its discretion in deciding to keep juror 5 on the jury panel and monitor the level of his attention. *See State v. Hughes*, 106 Wn.2d 176, 204, 721 P.2d 902 (1986) ("The drowsiness issue was not again brought to the court's attention, except when breaks were requested. Both counsel and the court were aware of the potential problem, monitored it and handled it appropriately. Nothing

---

[14] Outside the jury's presence the trial court stated, "The clerk informs me we have to keep an eye on No. 5. Apparently he is nodding off frequently." 3 RP at 300.

suggests that the jury drowsiness problem was such as to prejudice the defendant."). This argument lacks merit.[15]

B.     VIOLATING POLICE MANUAL

Davis next argues that the Bremerton Police Department violated its own "Special Operations Group Manual" by working with Sutton despite the fact that they found drugs and drug paraphernalia in her vehicle. But as presented, whether or not Bremerton police violated a departmental rule has no bearing on Davis's convictions. Accordingly, this argument lacks merit.

C.     CUMULATIVE ERROR DOCTRINE

Last, Davis argues that she is entitled to a new trial pursuant to the cumulative error doctrine. "The application of that doctrine is limited to instances when there have been several trial errors that standing alone may not be sufficient to justify reversal but when combined may deny a defendant a fair trial." *State v. Greiff*, 141 Wn.2d 910, 929, 10 P.3d 390 (2000). The cumulative error doctrine does not warrant reversal in this case as nothing in the record suggests that Davis received an unfair trial (or even that any significant errors occurred during her trial).

In conclusion, because Davis received effective assistance of counsel, probable cause supported issuing the search warrant, sufficient evidence supports her delivery of a controlled substance convictions and school zone enhancements, and the rest of Davis's arguments lack merit, we affirm the delivery of a controlled substance convictions along with the school zone enhancements. However, because RCW 69.53.010(1) is inapplicable to the circumstances of this case, we vacate Davis's conviction for unlawful use of a building for drug purposes and remand

---

[15] Davis also argues that counsel was ineffective for failing to challenge the probable cause basis for the search warrant. Because we already addressed this above, we do not again address that argument here.

No. 42844-0-II

for resentencing. In addition, on remand, the trial court is to correct Davis's judgment and sentence to make clear that the counts as reflected in the jury's verdicts correspond to the counts she is being sentenced on to avoid potential confusion.

QUINN-BRINTNALL, J.

We concur:

JOHANSON, A.C.J.

FEARING, J.