IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 31448-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| RICHARD EDWARD FENTON, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Following a jury trial, Richard Fenton was convicted of

two counts of delivery of a controlled substance within 1,000 feet of a school bus route

and one count of possession with intent to manufacture or deliver a controlled substance.

Mr. Fenton appeals, contending that the police lacked probable cause to obtain a search

warrant authorizing the search of his apartment and that the lower court erred by not

granting his motion to suppress. We conclude that the State established both bases of the

*Aguilar-Spinelli*[1] test and affirm the lower court's denial of Mr. Fenton's motion to

---

[1] *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964), *abrogated by Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983); *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969), *abrogated by Gates*, 462 U.S. 213, *but adhered to by State v. Jackson*, 102 Wn.2d 432, 688 P.2d 136

suppress.

Mr. Fenton also asserts the trial court erred by imposing a variable term of community custody and that the judgment and sentence contains a scrivener's error that requires correction. We agree and remand to correct the judgment and sentence.

## FACTS

On November 7, 2010, a Benton County Superior Court judge issued a search warrant based upon the following information contained in Kennewick Police Department Detective Juan Dorame's supporting affidavit:

> During the month of September (2010), CI #10-027 provided information that Richard "Rick" Fenton (Thurman), is and has been selling narcotics in the city of Kennewick. The CI has provided information in the past that I have corroborated, based on my investigations, and I, as well as other law enforcement officers in our area, have deemed the CI's information as credible. The information the CI has provided in the past has lead [sic] to several arrests and seizure of narcotics. This leads me to believe that the CI's information is credible and reliable. The CI has been in constant contact with me over the last several months.
>
> The CI stated that Richard Fenton has been selling Methamphetamine from a residence located at 108 N. Conway Street Apt. #B, Kennewick Washington, Benton County. I checked our local (I/Leads) database and located Richard Fenton living at 108 N. Conway Street #B. I showed the CI a photo of Fenton, without personal information attached to it and the CI confirmed that he was in fact the person that is selling Methamphetamine at the aforementioned location.

(1984).

During the first three days of November (2010), I conducted a controlled buy of Methamphetamine from Richard Fenton at 108 N. Conway Street Apt. #B.

During the controlled buy, I (along with other detectives from the Kennewick Police Department) met the CI at a pre-determined location. The CI was searched before and after the controlled buy and found to be clear of any drugs, money, or contraband. Before the buy I listened while the CI called Richard Fenton . . . and arranged to purchase Methamphetamine. I provided the CI pre-recorded buy funds (that were used to purchase the Methamphetamine) and the CI was kept under constant surveillance as the CI entered and exited 108 N. Conway Street #B. After the controlled buy, the CI provided us a small clear plastic zip lock baggie containing purported Methamphetamine that was purchased from Richard Fenton (Thurman). After the controlled buy, the purported Methamphetamine was field tested and it tested presumptive positive for Methamphetamine.

Based on the aforementioned information I believe there is probable cause to believe that Richard Fenton (Thurman) is selling narcotics (Methamphetamine) from his apartment (108 N. Conway Street Apt. #B). I believe that the crime of Methamphetamine possession/delivery has and is occurring at 108 N. Conway Street Apt. #B and evidence of these crimes could be located at 108 N. Conway Street Apt. #B and also be located on his person.

Clerk's Papers (CP) at 22-23.

When officers served the warrant at Mr. Fenton's apartment, they found methamphetamine in several separate bags, packaged marijuana, drug paraphernalia, drug ledgers, and scales. The State charged Mr. Fenton with two counts of delivery of a controlled substance (methamphetamine) within 1,000 feet of a school bus route and one

count of possession with intent to manufacture or deliver a controlled substance.

Mr. Fenton moved to suppress the evidence, arguing the search warrant was invalid because the affidavit failed to establish the informant's reliability. The trial court denied the motion, concluding the affidavit was legally sufficient to establish the informant's reliability. The jury found Mr. Fenton guilty as charged. At sentencing, the court imposed a standard range sentence and a variable term of community custody.

## ANALYSIS

*Probable Cause.* Mr. Fenton attacks the validity of the warrant on the ground that the informant was unreliable. Specifically, he maintains that the warrant fails to set forth facts that establish the informant's veracity and basis of knowledge as required by *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969) and *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964).

We review issuance of a search warrant for an abuse of discretion. *State v. Maddox*, 152 Wn.2d 499, 509, 98 P.3d 1199 (2004). In so doing, we give great deference to the issuing judge's determination of probable cause. *State v. Chenoweth*, 160 Wn.2d 454, 477, 158 P.3d 595 (2007). Accordingly, we will generally resolve doubts about the existence of probable cause in favor of the validity of the search warrant. Both on appeal and before the trial court at the suppression hearing, review of the issuance is "limited to

4

the four corners of the affidavit supporting probable cause." *State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008). Moreover, although we defer to the issuing judge's determination, the trial court's assessment of probable cause on a motion to suppress is a legal conclusion we review de novo. *State v. Chamberlin*, 161 Wn.2d 30, 40-41, 162 P.3d 389 (2007).

Probable cause exists if the State sets forth facts and circumstances which, if believed, lead a neutral and detached person to conclude that more probably than not, evidence of a crime will be found if a search takes place. *In re Det. of Petersen*, 145 Wn.2d 789, 797, 42 P.3d 952 (2002).

When determining probable cause to arrest on an informant's tip, Washington courts apply the *Aguilar-Spinelli* test. *State v. Salinas*, 119 Wn.2d 192, 199-200, 829 P.2d 1068 (1992). Under that test, the State must establish the informant's: (1) basis of knowledge and (2) veracity and reliability. *State v. Tarter*, 111 Wn. App. 336, 340, 44 P.3d 899 (2002). "Both the reliability of the manner by which the information was acquired and the reliability of the informant must be shown in an effort to determine *present* reliability." *State v. Casto*, 39 Wn. App. 229, 234-35, 692 P.2d 890 (1984) (emphasis in original). Conclusory assertions of reliability will not suffice. *Id.*

Mr. Fenton first challenges the informant's veracity. He argues the statements in the affidavit failed to provide information about the informant's criminal history or details of her involvement in previous controlled buys. He argues, "[t]he detective's conclusory statement hardly conveys a 'track record' of supplying reliable specific information that may support a search warrant." Br. of Appellant at 9. He also maintains that under *State v. Steenerson*, 38 Wn. App. 722, 688 P.2d 544 (1984), police-initiated buys do not demonstrate an informant's reliability. Relying on that case, he argues that because the affidavit does not establish that the informant initiated the controlled buy, "[t]he informant's purchase of suspected methamphetamine suggested only her cooperation and indicates very little about [her] credibility and ability to accurately report facts while not under supervision." Br. of Appellant at 10-11.

Mr. Fenton's reliance on *Steenerson* is misplaced. While he is correct that police-initiated buys alone do not establish veracity, it is well settled that the veracity prong may be satisfied if the informant has a track record of providing accurate information to the police. *State v. Jackson*, 102 Wn.2d 432, 437, 688 P.2d 136 (1984); *Salinas*, 119 Wn.2d at 200. In *State v. Fisher*, the court stated, "it is almost universally held to be sufficient if information has been given which has led to arrests and convictions." *State v. Fisher*, 96 Wn.2d 962, 965, 639 P.2d 743 (1982).

Moreover, a properly conducted controlled buy makes an informant a credible source of information. 1 WAYNE LAFAVE, *Search & Seizure* § 3.3(b) at 512 (1978); *Casto*, 39 Wn. App. at 234-35. In *Casto*, the informant reported to police that he could purchase drugs in the defendant's residence. Police then arranged for the informant to make a purchase with marked bills and searched the informant for drugs before the transaction. Police maintained surveillance on the informant before he entered the residence. Upon searching him when he emerged, police found drugs. In concluding these facts established the informant's reliability, the court explained:

> In a "controlled buy," an informant claiming to know that drugs are for sale at a particular place is given marked money, searched for drugs, and observed while sent into the specified location. If the informant "goes in empty and comes out full," his assertion that drugs were available is proven, and his reliability confirmed. Properly executed, a controlled buy can thus provide the facts and circumstances necessary to satisfy *both* prongs of the test for probable cause.

*Casto*, 39 Wn. App. at 234 (emphasis in original). Thus, under *Casto*, the credibility prong is established through the showing that the confidential informant had provided police with accurate information in the past.

Mr. Fenton also challenges the informant's basis of knowledge, contending the affidavit fails to establish that the informant had any firsthand dealing with Mr. Fenton or had been inside his apartment. Generally, the "basis of knowledge" prong requires a

7

showing that the informant has personal knowledge or is passing on firsthand information. *Jackson*, 102 Wn.2d at 437. *Casto* disposes of Mr. Fenton's contention. As just discussed, under *Casto*, a showing of a properly executed controlled buy satisfies the basis of knowledge prong. Here, the controlled buy was similar to the one in *Casto*: the informant was "searched before and after the controlled buy," given prerecorded buy money, "kept under constant surveillance" as she entered and exited Mr. Fenton's apartment, and turned over a controlled substance after the buy.

Under these facts, the affidavit meets both prongs of the *Aguilar-Spinelli* test. Consequently, the trial court correctly denied Mr. Fenton's suppression motion.

The showing of probable cause was sufficient under the *Aguilar-Spinelli* test. Accordingly, the trial court properly denied the motion to dismiss.

*Sentencing Issues.* Mr. Fenton next argues that the trial court sentenced him to a variable range of community custody in violation of RCW 9.94A.701 because the length of his community custody depended on the amount of early release time he earned. The State concedes error. We accept the State's concession and remand for a correction of Mr. Fenton's sentence consistent with this opinion.

A trial court may only impose a sentence authorized by statute. *In re Pers. Restraint of Carle*, 93 Wn.2d 31, 33, 604 P.2d 1293 (1980). We review the legality of a

8

sentence de novo. *In re Postsentence Review of Leach*, 161 Wn.2d 180, 184, 163 P.3d 782 (2007). Under RCW 9.94A.701, "a court may no longer sentence an offender to a variable term of community custody contingent on the amount of earned release but instead, it must determine the precise length of community custody at the time of sentencing." *State v. Franklin*, 172 Wn.2d 831, 836, 263 P.3d 585 (2011).

Here, the court imposed the following sentence of community custody:

(A) The defendant shall be on community placement or community custody for the longer of:
(1) the period of early release. RCW 9.94A.728(1)[,] (2); or
(2) the period imposed by the court, as follows:
Counts one, two and three for 12 months.

CP at 123.

Under *Franklin*, the court could only sentence Mr. Fenton to a finite community custody term of 12 months. Accordingly, we remand to the trial court to issue a corrected judgment and sentence consistent with this opinion.

Mr. Fenton also contends that the judgment and sentence contains a scrivener's error, pointing out that it states that the date of count 2 was November 1, 2010, whereas the evidence established that the date of the offense was November 5, 2010. The State again concedes error. We accept the State's concession. The remedy for clerical or scrivener's errors in judgment and sentence forms is remand to the trial court for

9

No. 31448-1-III
*State v. Fenton*

correction. *In re Pers. Restraint of Mayer*, 128 Wn. App. 694, 701, 117 P.3d 353 (2005) (citing CrR 7.8(a)); *see* RAP 7.2(e).

The trial court erred by imposing a variable term of community custody and incorrectly stating the date of count 2. We, therefore, affirm the convictions but remand to the trial court to issue a corrected judgment and sentence consistent with this opinion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____          _____
Korsmo, J.                                        Fearing, J.