IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 83309-0-I |
| Respondent, | |
| v. | DIVISION ONE |
| ANTHONY WILLIAM GEORGE, SR., | UNPUBLISHED OPINION |
| Appellant. | |

SMITH, J. — Anthony William George, Sr., appeals his conviction of three counts of possession of a controlled substance with intent to deliver, one count of possession of a controlled substance, and three counts of unlawful possession of a firearm in the first degree. George asserts that the warrant authorizing the search of his home lacked probable cause and particularity, and that the trial court erred by improperly excluding a Black juror, admitting certain evidence, depriving him of his right to confrontation and due process, failing to give a unanimity instruction, and subjecting him to double jeopardy. George also contends that insufficient evidence supports his convictions, the trial court exhibited bias, and his drug convictions all should have been considered the same criminal conduct for purposes of calculating his offender score.

The State of Washington concedes that George's simple possession conviction must be vacated in light of Blake[1] and that George's remaining drug convictions constitute the same criminal conduct.

---

[1] State v. Blake, 197 Wn.2d 170, 481 P.3d 521 (2021).

Citations and pin cites are based on the Westlaw online version of the cited material.

We affirm George's convictions with the exception of the simple possession charge, and remand to the trial court to vacate the simple possession conviction and resentence George based on a corrected offender score.

FACTS

In January of 2019, the Grays Harbor Drug Task Force (DTF) obtained a warrant to search George, his residence, or vehicles for, among other things, "controlled substances as found therein, together with the vessels in which they are contained." According to DTF Detective Richard Ramirez's affidavit for the search warrant, a confidential informant (CI) known as CI 18-21 reached out to DTF in 2018. CI 18-21 had information about illegal narcotic dealers and wanted to obtain leniency on pending charges. After DTF established that CI 18-21 had a working knowledge of the drug world, it contacted the Grays Harbor County Prosecutor's Office, which agreed to provide leniency if the CI assisted DTF.

Detective Ramirez attested that in December 2018, CI 18-21 contacted DTF asking if they knew George. DTF and Detective Ramirez knew George from two previous 2017 "controlled buys"[2] for oxycodone pills. CI 18-21 stated that they had been buying oxycodone pills from George, and that George was willing to sell cocaine if asked. In January 2019, CI 18-21 agreed to arrange and participate in a controlled buy for a specific amount of oxycodone at George's residence. Detective Ramirez discussed with CI 18-21 the details of

---

[2] A controlled buy is when an informant, with the help and supervision of law enforcement, buys illegal contraband.

the controlled buy. Detective Ramirez also told CI 18-21 the specific route to the buy location and back, that the CI was not to stop or deviate from the route, that the CI was not to contact anyone along the way, and that the CI would be under constant surveillance. After the briefing, Detective Ramirez searched CI 18-21 and found no money, drugs, weapons, or contraband. Detective Ramirez then provided CI 18-21 marked (pre-recorded serial number) money for the buy and instructed that the money was only for the purchase of the oxycodone pills.

DTF drove CI 18-21 to George's residence and established surveillance nearby. It observed CI 18-21 knock on the front door to George's residence. George spoke to the CI for a few minutes before walking back inside the residence. Through the window, DTF observed George grab something before walking back to the door and making a hand to hand transaction with the CI. The CI walked back to the vehicle and handed Detective Ramirez several light blue pills. DTF, Detective Ramirez, and CI 18-21 then drove to another predetermined location where DTF could inspect the pills further. From Detective Ramirez's experience and training, he recognized them as 30 milligram oxycodone pills.

Based on the 2019 and two 2017 controlled buys, DTF determined that there was probable cause to search George and his residence. DTF requested and obtained a search warrant claiming that George committed or reasonably appeared to be committing a violation of the Uniform Controlled Substance Act.[3]

---

[3] Ch. 69.50 RCW.

3

DTF contacted George at his residence, served the warrant, and took custody of George. After receiving his Miranda[4] rights, George indicated that there could be some cocaine in a vehicle and guns around the property.

When searching George's property, DTF located around 20 firearms in his residence, a vehicle, and a motorhome. This cache of firearms included a Harrington bolt action .22 caliber rifle with its firing mechanism "hanging out" found leaning against the wall in the living room near the primary bedroom. Additionally, the search of George's residence revealed black bags containing bundles of cash wrapped with rubber bands, sandwich bags, oxycodone, Gabapentin, Xanax,[5] different types of pills, pill bottles, digital scales with white residue, and cocaine. One black bag contained more than $40,000 in a plastic bag bundled with a rubber band.

The State charged George with one count of possession of cocaine with intent to deliver within 1,000 feet of a school bus stop, one count of possession of oxycodone with intent to deliver within 1,000 feet of a school bus stop, and one count of possession of Gabapentin with intent to deliver, all including the enhancement that he was armed with a firearm. The State also charged George with one count of possession of Xanax and three counts of Unlawful Possession of a Firearm in the First Degree: one count each for a Ruger MK II .22 caliber pistol, a Mossberg Model 715T AR rifle, and the Harrington .22 rifle.

---

[4] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[5] The prescription drug name is Alprazolam; Xanax is a common brand of the drug.

4

The night before trial, George moved to suppress the evidence seized pursuant to the warrant, arguing that the warrant was overbroad and the information contained in the probable cause affidavit was unreliable. Additionally, George moved to exclude evidence of the 17 firearms that were seized but not used to enhance the charges, claiming that the firearms were more prejudicial than probative. The court denied both motions. After weighing the probative and prejudicial effect of admitting the firearms, the court concluded that the other 17 firearms could be introduced through testimony.

The jury found George guilty on all counts. After the verdict, a different attorney than the one who represented him at trial appeared and represented George during the sentencing hearing. The new attorney orally requested a continuance because defense counsel had a trial conflict. The court denied the request. The court then sentenced George to a standard range sentence of 240 months of confinement. George appeals.

ANALYSIS

George asserts that his convictions must be reversed on multiple grounds. He also raises a number of challenges to his sentence. As discussed below, we affirm George's convictions except for the simple possession charge, and remand for resentencing.

Search Warrant

George claims the evidence seized under the warrant should have been suppressed because the warrant was neither supported by probable cause nor sufficiently particular. We disagree.

5

1) Probable Cause

The Fourth Amendment of the United States Constitution and article 1, section 7 of the Washington Constitution require a search warrant to be issued upon a determination of probable cause. State v. Jackson, 150 Wn.2d 251, 264, 76 P.3d 217 (2003). "Probable cause exists where the affidavit in support of the warrant sets forth facts and circumstances sufficient to establish a reasonable inference that the defendant is probably involved in criminal activity and that evidence of the crime may be found at a certain location." Jackson, 150 Wn.2d at 264. A magistrate exercises discretion in determining whether to issue a warrant. State v. Vickers, 148 Wn.2d 91, 108, 59 P.3d 58, (2002). We review this decision for abuse of discretion. Vickers, 148 Wn.2d at 108. We generally accord great deference to the magistrate and evaluate the supporting affidavit for a search warrant in a common sense manner. Id. "Doubts concerning the existence of probable cause are generally resolved in favor of issuing the search warrant." Id. at 108-09.

George asserts that the warrant was not supported by probable cause because the State's informant was unreliable and the controlled buys from 2017 were too stale to be considered in evaluating probable cause.

a) Reliability

A magistrate may issue a search warrant "based on information received from an informant if the application establishes probable cause to believe that the items sought will be found in the place to be searched." State v. Casto, 39 Wn. App. 229, 232, 692 P.2d 890 (1984). Probable cause based on statements from

an informant requires a showing that the informant is probably trustworthy and has personal knowledge of the facts. State v. Merkt, 124 Wn. App. 607, 613, 102 P.3d 828 (2004). Mere belief and conclusory statements in a police officer's affidavit in support of the search warrant application does not provide factual basis for a magistrate to make an independent judgment of the informant's reliability. State v. Steenerson, 38 Wn. App 722, 726, 688 P.2d 544 (1984).

Washington Courts apply the two pronged Aguilar/Spinelli[6] analysis to evaluate a CI's reliability. Casto, 39 Wn. App. at 232; State v. Jackson, 102 Wn.2d 432, 435, 688 P.2d 136 (1984). "The first or 'basis of knowledge' prong requires that the informant have personal knowledge of the facts asserted to establish probable cause." Casto, 39 Wn. App. at 233. In the second or "veracity" prong, the magistrate judge must receive factual data from which to determine the informant's present reliability. Id.

A properly executed controlled buy is sufficient to satisfy both prongs. Casto, 39 Wn. App. at 234.

> In a "controlled buy," an informant claiming to know that drugs are for sale at a particular place is given marked money, searched for drugs, and observed while sent into the specified location. If the informant "goes in empty and comes out full,'' his assertion that drugs were available is proven, and his reliability confirmed.

Id. (quoting 1 Wayne R. LaFave, SEARCH AND SEIZURE § 3.3(b) at 512 (1978)).

Here, George asserts that the court erred by admitting evidence from CI 18-21 because procedural irregularities deprived the court of the facts needed

---

[6] Spinelli v. United States, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637, (1969); Aguilar v. Texas, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964).

to assess the probability of pills being introduced by the informant. However, the circumstances of CI 18-21's controlled buy were sufficient to establish the informant's reliability. CI 18-21 received marked money at a set location. Detective Ramirez searched CI 18-21 for drugs before departing for George's residence. DTF observed CI 18-21 while on route and at George's residence. Once CI 18-21 purchased pills with the marked money and DTF determined that the pills were oxycodone, CI 18-21's reliability was established.

George disagrees and claims that the court disregarded the probability of fraud by the CI during the controlled buy. Specifically, George claims that boilerplate language in the affidavit for search warrant stated that DTF "searched the CI and/or his/her vehicle (*if applicable*) and found no money, drugs, weapons or contraband," (emphasis added) and did not document the actual search. However, the State explained that the "if applicable" language was a textual prompt for detectives and is meant to be vague to protect the CI whose method of arrival could reveal or narrow down the identity to any subsequent reader.

Also, enough evidence exists to support the CI's reliability on other grounds. CI 18-21 established credibility with DTF by demonstrating a working knowledge of illicit drugs and people involved in selling drugs. This included knowledge of various types of drugs, how the drugs are commonly packaged for street level sale, and street prices for different drugs. CI 18-21 also identified the names, addresses, contact information, and drug pricing for several suspected dealers previously confirmed to DTF through investigations and reliable informants. With this demonstrably reliable knowledge, the trial court did not err

8

in concluding that both of the Aguilar/Spinelli prongs were satisfied and the warrant was supported by probable cause.

### b) Staleness of the Information

Because time passes between observations of criminal activity and the presentation of the affidavit to the magistrate, "[t]he magistrate must decide whether the passage of time is so prolonged that it is no longer probable that a search will reveal criminal activity or evidence, i.e., that the information is stale." State v. Lyons, 174 Wn.2d 354, 360–61, 275 P.3d 314 (2012). The magistrate determines staleness based on the circumstances of each case. Lyons, 174 Wn.2d at 361. "Among the factors for assessing staleness are the time between the known criminal activity and the nature and scope of the suspected activity." Id.

George contends that the two 2017 controlled buys were too stale to support a search warrant. But the warrant affidavit also included the 2019 controlled buy, which occurred just days earlier. Additionally, according to Detective Ramirez's affidavit, CI 18-21 stated that they had been buying oxycodone from George "for some time now." The magistrate's probable cause determination was sufficiently supported by the very recent controlled buy and the CI's report of ongoing purchases from George.

### 2) Particularity of the Warrant

George next challenges the warrant on the basis that it was overbroad. The warrant permitted seizure of "controlled substances." George says that the warrant lacked particularity because it did not specify oxycodone. We disagree.

9

Under the Fourth Amendment to the United States Constitution, a search warrant must describe with particularity the place to be searched and the person or things to be seized. State v. Perrone, 119 Wn.2d 538, 546, 834 P.2d 611 (1992). Particularity in a search warrant prevents "general searches, . . . seizure of objects on the mistaken assumption that they fall within the issuing magistrate's authorization, and . . . the issuance of warrants on loose, vague, or doubtful bases of fact." Perrone, 119 Wn.2d at 545. " '[T]he warrant must enable the searcher to reasonably ascertain and identify the things which are authorized to be seized.' " Id. at 546 (quoting United States v. Cook, 657 F.2d 730, 733 (5th Cir. 1981)). The requirements of particularity are met if the substance to be seized is described with " 'reasonable particularity.' " Perrone, 119 Wn.2d at 546 (quoting United States v. Krasaway, 881 F.2d 550, 553 (8th Cir. 1989). Courts are to evaluate search warrants in a common sense, practical manner, instead of in a hyper technical manner. Perrone, 119 Wn.2d at 549. We review de novo whether a search warrant contains a sufficiently particular description. Id. at 538; State v. Garcia, 140 Wn. App 609, 622, 166 P.3d 848 (2007).

The degree of particularity required depends on the nature of the materials sought and the circumstances of the case. Perrone, 119 Wn.2d at 547. Generic classifications do not necessarily result in an impermissibly overbroad warrant. State v. Stenson, 132 Wn.2d 668, 692, 940 P.2d 1239 (1997). Additionally, "[a] lesser degree of precision may satisfy the particularity requirement when a warrant authorizes the search for contraband or inherently illicit property." State v. Chambers, 88 Wn. App. 640, 644, 945 P.2d 1172 (1997). A general warrant

that uses the phrase "controlled substance" instead of specifically describing the contraband satisfies the constitutional particularity requirement. Chambers, 88 Wn. App. at 647-48; RCW 69.50.509. The fact the warrant could have been more precise in terms of identifying a specific controlled substance as the focus of the search does not affect its validity, since reasonable particularity is all that is required. State v. Christiansen, 40 Wn. App. 249, 254, 698 P.2d 1059, 1062 (1985).

Finally, lawful materials can be relevant to a crime. State v. Martinez, 2 Wn. App. 2d 55, 67, 408 P.3d 721 (2018). A warrant that authorizes seizure of lawful materials is not automatically overbroad. Id.

George had a prescription and could lawfully possess oxycodone. He asserts that the warrant for the search of his home lacked particularity because it failed to describe oxycodone as the controlled substance to be seized.[7] Under the Uniform Controlled Substances Act, oxycodone is a schedule II controlled substance.[8] A general warrant that uses the phrase "controlled substance" instead of specifically describing oxycodone satisfies the constitutional particularity requirement. Chambers, 88 Wn. App. at 647-48. The fact that the

---

[7] George supports this assertion by citing to State v. Besola, 184 Wn.2d 605, 610-13, 359 P.3d 799 (2015), where our court concluded that the search warrant containing broad descriptions of child pornography to be seized was found to be overbroad because it allowed officers to seize lawfully possessed materials. However, this case is distinguishable in that the materials sought in Besola were protected by the First Amendment, which require a heightened degree of particularity unlike controlled substances. See Perrone, 119 Wn.2d at 547.

[8] A schedule II controlled substance may be lawfully possessed only with a prescription. RCW 69.50.206.

11

warrant authorizes the seizure of a legal substance "does not automatically make the warrant overbroad." Martinez, 2 Wn. App. 2d at 67. Furthermore, George was unlawfully selling oxycodone thus making his prescribed oxycodone relevant to a crime. Id. Because George was selling controlled substances, a lesser degree of precision satisfies the particularity requirement.

George asserts that confining prescription drug warrants to the specific drug at issue protects sensitive healthcare information. Specifically, George claims that police rummaging through lawful prescription drugs could lead them to discovery of controversial therapies for psychiatric issues, sexually transmitted infections, chemical abortions, and gender reassignments, which would be an invasion of privacy. George cites to State v. Muhammad, 194 Wn.2d 577, 451 P.3d 1060 (2019), where cell site location information (CSLI) used to find the location of a cellular phone was held to constitute private information for the purposes of the Fourth Amendment and article I, section 7 of the Washington State Constitution. Muhammad requires a warrant based on probable cause to acquire a person's CSLI. 194 Wn.2d at 595-96.

Cell phone location data and prescription drugs may share a similar privacy concern as they can both provide intimate details about a person. But Muhammad significantly relied on Carpenter v. United States, 138 S. Ct. 2206, 2220, 201 L. Ed. 2d 507, 86 U.S.L.W. 4491 (2018), which cautioned that its decision about cell phone location data was narrow and did not express a view on other matters. 194 Wn.2d at 590-93. In light of limited reach of Carpenter

12

and, therefore, <u>Muhammad</u>, we decline to extend the privacy protections beyond the CSLI context.

The search warrant was neither overbroad nor lacking in probable cause. Issuance of the warrant was not and abuse of discretion and the search and resulting seizure did not violate George's constitutional rights.

### Juror Exclusion

During jury selection, the State questioned the venire as follows: "Is there anybody who as a potential juror, is actually going to have a problem with the idea that certain evidence is not admissible, and you won't get to hear it." Juror 53, a Black[9] member of the venire, responded that it was "always going to be a problem." Later, the State exercised a peremptory challenge to strike Juror 53. George objected under General Rule (GR) 37and the trial court overruled the objection.

George asserts the trial court violated GR 37 by overruling George's objection to the State's use of a peremptory challenge to strike prospective Juror 53. We disagree.

The purpose of GR 37 is to eliminate the unfair exclusion of potential jurors based on race or ethnicity. GR 37(a). It provides that either a party or the court "may object to the use of a peremptory challenge to raise the issue of improper bias." GR 37(c). "After an objection has been raised, the party

---

[9] The record contains no indication that the juror self-identified as Black, but the attorneys and the court all agree that the juror was Black. We accept this assertion for the purposes of the appeal.

exercising a peremptory challenge is required to articulate its reasons for doing so." State v. Listoe, 15 Wn. App. 2d 308, 319, 475 P.3d 534 (2020); GR 37(d). "The trial court then evaluates the reasons for exercising the challenge under the totality of the circumstances." Listoe, 15 Wn. App. 2d at 319; GR 37(e). If "an objective observer could view race or ethnicity as a factor in the use of the peremptory challenge, then the peremptory challenge shall be denied." GR 37(e) An "objective observer is aware that implicit, institutional, and unconscious biases, in addition to purposeful discrimination, have resulted in the unfair exclusion of potential jurors in Washington." GR 37(f). The circumstances that the court should consider include,

> (i)  the number and types of questions posed to the prospective juror, which may include consideration of whether the party exercising the peremptory challenge failed to question the prospective juror about the alleged concern or the types of questions asked about it;

> (ii)  whether the party exercising the peremptory challenge asked significantly more questions or different questions of the potential juror against whom the peremptory challenge was used in contrast to other jurors;

> (iii) whether other prospective jurors provided similar answers but were not the subject of a peremptory challenge by that party;

> (iv) whether a reason might be disproportionately associated with a race or ethnicity; and

> (v) whether the party has used peremptory challenges disproportionately against a given race or ethnicity, in the present case or in past cases.

GR 37(g). Additionally, there are presumptively invalid reasons for a peremptory challenge, which include,

> (i)  having prior contact with law enforcement officers;

> (ii)  expressing a distrust of law enforcement or a belief that law enforcement officers engage in racial profiling;

14

(iii) having a close relationship with people who have been stopped, arrested, or convicted of a crime;

(iv) living in a high-crime neighborhood;

(v) having a child outside of marriage;

(vi) receiving state benefits; and

(vii) not being a native English speaker.

GR 37(h)(i)-(vii). These reasons have been historically associated with improper discrimination in jury selection in Washington State. GR 37(h). "Similarly, certain types of conduct have also been associated with historically discriminatory peremptory challenges and cannot be relied on as a justification absent proper notice and corroboration from the judge or opposing counsel." Listoe, 15 Wn. App. 2d at 322. Denial of a challenge under GR 37 is reviewed de novo. State v. Jefferson, 192 Wn.2d 225, 250, 429 P.3d 467 (2018).

The State used a peremptory challenge to strike prospective Juror 53 based on responses to questions asked during voir dire:

> [State]: Is there anybody who, as a potential juror, is actually going to have a problem with the idea that certain evidence is not admissible, and you won't get to hear it. You will go back to deliberate, and say, I feel like someone is hiding the ball, the State, the judge, defense, somebody is hiding the ball, and that's going to affect your deliberations so you are not fair and impartial to the defendant. Anybody have an issue with that? You might, number 53?
>
> [Juror 53]: Yes.
>
> [State]: Okay.
>
> [Juror 53]: There are lot[] of people locked up right now because everything wasn't presented.
>
> [State]: Okay. And does—let me ask you the question. Do you think that our criminal justice system works, broadly speaking?
>
> [Juror 53]: Yes and no.
>
> [State]: Okay. There is always room for improvement?
>
> [Juror 53]: Right.

. . .

[State]: Okay. 53, if you are on this jury and that situation does come up and you feel like something wasn't brought out, or—

[Juror 53]: I would like to know why.

[State]: Sure. Let's say you don't get to find out why. Is that something that through deliberations you might be able to talk to your fellow jurors and come to—or is that always going to be a problem?"

[Juror 53]: Always going to be a problem.

George challenged the use of this peremptory under GR 37.

The State explained that it exercised its peremptory because Juror 53 expressed that "he felt there would be a lot of unease, that he felt that there would be some hiding of the ball, and he specifically said that that would affect his ability to deliberate, that it would affect his ability to consider the evidence." The State noted that those issues might not necessarily interfere with Juror 53's ability to be fair and impartial but the "responses were unique." According to the State, the fact that Juror 53 was black "had nothing to do with where the answers came from."

George claims that Juror 53's statements that "there are a lot[] of people locked up right now because everything wasn't presented" and answer to whether the criminal justice system worked demonstrated distrust in the court, one of the presumptively invalid reasons for a peremptory challenge. GR 37(h)(ii). However, the State did not cite distrust of law enforcement as the grounds for its challenge. The State's stated reason was the concern that Juror 53 would be unable to properly consider the evidence presented given concerns about excluded evidence.

16

The State did not assert any of the presumptively invalid reasons for striking Juror 53. The State also did not ask more questions of Juror 53 or different questions from the other potential jurors. And while other members of the venire expressed possible issues with missing evidence, the trial court described Juror 53's answer as "strongly worded" and "he was the only one . . . that said, hey, that's a problem."

In light of Juror 53's statements, an objective observer would not find race to be a factor in the State's use of a peremptory challenge. The trial court did not err in denying George's GR 37 challenge.

Admissibility of Statements

George claims the State violated Wash. Rules of Evidence (ER) 404(b) during closing argument by improperly introducing the 17 firearms that were not a part of his charges, as well as evidence implying George was a major drug dealer with cartel connections.

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." ER 404(b). However, this evidence may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." ER 404(b). "To admit evidence of other crimes, wrongs, or acts, the trial judge is obligated to: (1) identify the purpose for which the evidence is sought to be introduced; and (2) determine whether evidence is relevant to prove an essential element of the crime charged." State v. Dennison, 115 Wn.2d 609, 628, 801 P.2d 193 (1990).

Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence. Dennison, 115 Wn.2d at 628; ER 401. Proper evidence will not be excluded because it may also show that the defendant committed unrelated crimes. State v. Powell, 126 Wn.2d 244, 264, 893 P.2d 615 (1995). "If the court finds the information relevant, it must weigh on the record the probative value of the evidence against its prejudicial effect." State v. Brown, 113 Wn.2d 520, 526, 782 P.2d 1013 (1989).

We review admission of evidence for abuse of discretion. Powell, 126 Wn.2d at 258. A trial court abuses its discretion when its decision is manifestly unreasonable or based upon untenable grounds or reasons. Id. But evidentiary error requires reversal only if it leads to prejudice. State v. Neal, 144 Wn.2d 600, 611, 30 P.3d 1255 (2001). "An error is prejudicial if, 'within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.' " Id. (quoting State v. Smith, 106 Wn.2d 772, 780, 725 P.2d 951 (1986)). Improperly admitted evidence is harmless if it is of minor significance in relation to the evidence as a whole. Neal, 144 Wn.2d at 611.

1) Firearms

The State charged George with three counts of unlawful possession of a firearm in the first degree based on three specific weapons: a Ruger MK II .22 caliber pistol, a Mossberg Model 715T AR rifle, and the Harrington .22 rifle. The State wanted to introduce evidence of 17 additional firearms to demonstrate control of these three firearms. The State argued that the number of firearms in

George's possession at his residence supported that he had control over the three specifically named firearms.

The judge determined that the existence of all the firearms was relevant to prove the essential element of unlawful possession of a firearm. "Did the defendant either actually or constructively have under his dominion and control any firearms or ammunition[?] . . . The existence of those guns and ammunition tends to make that more likely." The judge noted the potential for prejudice but concluded the "probative value of guns and the ammunition outweighs the prejudicial effect, given the nature of the charges, where they were found, the nature of [the] defense claim about the guns and ammunition." The court ruled that the State could introduce information about the firearms, but would not be allowed to "parade a whole truck full of guns [as] there may be a question about inflaming the passions of the jury and prejudice[]."

George did not deny that he knew the guns were on the property, but claimed they belonged to his son. The existence of 17 other firearms does not makes George's constructive possession of any single gun more likely. Thus, the evidence was not relevant and should not have been admitted.

While the introduction of the 17 firearms was error, it was harmless. The jury heard evidence of the three named firearms found in George's vehicle, residence, and mobile home. In addition, the State introduced overwhelming evidence on the charges of possession of a controlled substance and possession of a controlled substance with intent to deliver. Introduction of the additional firearms did not affect the outcome of the trial.

19

2) Method of Folding Cash

The State's witness, Officer Joe Strong, testified that "cartels or upper-level[] dealers require their cash to be tightly bundled, folded in half, and secured with a rubber band typically in $1,000 or $2,500 increments." Officer Strong stated that cash recovered from George's house was bundled in this manner. He also noted that there was no additional evidence that George was associated with the cartel. George claims these statements implied that he was a major drug dealer with ties to the cartel. However, George did not object to this testimony at trial. He failed to preserve error for review on appeal. RAP 2.5(a)(3).

Confrontation of Confidential Informants

George alleges that the State's use of information from non-testifying informant was inadmissible hearsay and violated his right to confrontation. We disagree.

"Under the Sixth Amendment's confrontation clause, '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.' " Hudlow, 182 Wn. App. 266, 282, 331 P.3d 90 (2014) (alterations in original) (quoting U.S. CONST. amend. VI). Admission of hearsay evidence implicates this right to confrontation. Neal, 144 Wn.2d at 607.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Hudlow, 182 Wn. App. at 278; ER 801(c). Unless an exception or exclusion applies, hearsay is inadmissible. Hudlow, 182 Wn. App. at 278. Whether a statement is hearsay depends on the purpose for which it is offered.

State v. Garcia, 179 Wn.2d 828, 845, 318 P.3d 266 (2014).  A statements is not hearsay when offered as a basis for inferring something else rather than to prove the truth of the matter asserted.  Id.  Whether a statement is hearsay is a question of law reviewed de novo.  Neal, 144 Wn.2d at 607.

Here, Officer Strong testified as to how DTF chooses its targets for investigation.  He stated that DTF "generally operate[s] with people who give us information," and "get[s] the word on the street who are the mid to upper-level targets."  George contends Officer Strong's testimony implied that DTF targeted George based on this information and was "thinly veiled hearsay" that implied George possessed drugs with intent to deliver.

Officer Strong's statements were not hearsay.  He did not repeat statements from informants for the truth of the matters asserted.  Rather, he provided a general description of the task force's method of choosing who to investigate which happened to include the use of informants.  George's right to confrontation was not violated by admission of improper testimonial hearsay.

### Sufficiency of the Evidence

George asserts that insufficient evidence supports certain of his convictions.  We disagree.

"Evidence is sufficient to support a conviction if, after viewing the evidence in the light most favorable to the State, it allows any rational trier of fact to find all of the elements of the crime charged beyond a reasonable doubt."  State v. DeVries, 149 Wn.2d 842, 849, 72 P.3d 748 (2003).  A challenge to the sufficiency of the evidence admits the truth of the State's evidence and all

reasonable inferences therefrom. Id. Review for sufficiency of the evidence is highly deferential to the jury's decision, including issues of credibility, persuasiveness, and conflicting testimony. State v. Davis, 182 Wn.2d 222, 227, 340 P.3d 820 (2014).

1) Intent of delivery for controlled substances

George claims that insufficient evidence supports his three convictions for possession of a controlled substance with intent to deliver. Washington case law does not support an inference of intent to deliver based on mere possession alone, but such an inference can be supported where possession is coupled with at least one other factor. State v. Brown, 68 Wn. App. 480, 483-84, 843 P.2d 1098. Here, the State presented evidence of scales with cocaine residue, $44,000 in cash, and three controlled buys in addition to George's possession of the controlled substances. The jury could reasonably infer from this evidence that George intended to sell the controlled substances in his possession. See State v. Lane, 56 Wn. App. 286, 297-298, 786 P.2d 277 (1989) (holding that one ounce of cocaine, a scale, and a large amount of cash was evidence of intent to deliver). Sufficient evidence supports the convictions for possession with intent to deliver.

2) Firearm Operability

George next contends insufficient evidence supports his conviction for unlawful possession of a firearm and the firearm enhancements because the

Harrington .22 rifle was not operable when it was found.[10]  Specifically, he relies

on State v. Recuenco, to assert that the State must prove that a gun is operable

to establish that it meets the legal definition of a "firearm."  163 Wn.2d 428, 437,

180 P.3d 1276 (2008).  "Whether the State was required to prove that [a] gun

was 'operational' is a question of law that we review de novo."  State v. Olsen, 10

Wn. App. 2d 731, 736, 499 P.3d. 1089 (2019).

> In Recuenco, our Supreme Court stated:
>
> [I]n order to prove a firearm enhancement, the State must introduce facts upon which the jury could find beyond a reasonable doubt the weapon in question falls under the definition of a 'firearm:' 'a weapon or device from which a projectile may be fired by an explosive such as gunpowder.' "

163 Wn.2d at 437 (quoting 11 WASHINGTON PRACTICE: WASHINGTON PATTERN

JURY INSTRUCTIONS: CRIMINAL 2.10.01 (2d ed. Supp. 2005)).  The court also stated

that "a jury must be presented with sufficient evidence to find a firearm operable

under this definition in order to uphold the enhancement."  Recuenco, 163 Wn.2d

at 437.

However, this language in Recuenco "was cited merely to point out that

differences exist between a deadly weapon sentencing enhancement and a

firearm sentencing enhancement" and was "nonbinding dicta."  State v. Raleigh,

157 Wn. App. 728, 735, 238 P.3d 1211 (2010).  We have "rejected the argument

that under Recuenco, a gun must be operable during the commission of the

crime to qualify as a firearm within the meaning of former RCW 9.41.010 (2001)."

---

[10] As discussed below in connection with George's unanimity instruction argument, the firearm enhancements were based on the Harrington .22 rifle.

Olsen, 10 Wn. App. 2d at 736–37. Instead, to qualify as a firearm "a device must be capable of being fired, either instantly or with reasonable effort and within a reasonable time." State v. Tasker, 193 Wn. App. 575, 594, 373 P.3d 310 (2016). Additionally, "[e]vidence that a device appears to be a real gun . . . is sufficient circumstantial evidence that it is a firearm." Id.

Regardless of operability, the Harrington .22 rifle qualified as a firearm under the existing law. Sufficient evidence supports the unlawful possession of a firearm conviction based on that firearm.

   3) Armed with a Firearm

Finally, George asserts that insufficient evidence supports a finding that he was "armed" with a firearm for purposes of the firearm enhancements to his convictions for possession with intent to deliver.

> "[I]n a criminal case wherein there has been a special allegation and evidence establishing that the accused . . . was armed with a deadly weapon at the time of the commission of the crime, the court shall make a finding of fact of whether or not the accused . . . was armed with a deadly weapon at the time of the commission of the crime[.]"

State v. Gurske, 155 Wn.2d 134, 137, 118 P.3d 333 (2005) (alterations in original) (quoting RCW 9.94A.602 (formerly RCW 9.94A.125 (2000)). Under former RCW 9.94A.602 (recodified as RCW 9.94A.825 (2009)), a firearm is a deadly weapon. Gurske, 155 Wn.2d at 137. "A person is 'armed' within the meaning of the statute 'if a weapon is easily accessible and readily available for use, either for offensive or defensive purposes.' " Gurske, 155 Wn.2d at 137-38

(internal quotation marks omitted) (quoting State v. Schelin, 147 Wn.2d 562, 567, 55 P.3d 632 (2002)).

Additionally, "there must be a nexus between the defendant, the crime, and the weapon." Gurske, 155 Wn.2d at 141; Schelin, 147 Wn.2d at 568. This prevents the risk of punishing a defendant under the deadly weapon enhancement for having a weapon unrelated to the crime. Gurske, 155 Wn.2d at 141. Because the presence of a weapon at a crime scene may be insufficient to establish a nexus, we examine the nature of the crime, the type of weapon, and the circumstances under which the weapon is found. Id. at 142.

" 'Whether a person is armed is a mixed question of law and fact.' " Schelin, 147 Wn.2d at 566 (quoting State v. Mills, 80 Wn. App. 231, 234–35, 907 P.2d 316 (1995)). If no dispute exists as to the location of the firearm, then "we determine whether the facts are sufficient, as a matter of law, to prove that [the defendant] was armed" under the de novo standard. Schelin, 147 Wn.2d at 566; Mills, 80 Wn. App. at 234–35.

Here, George claims that there was no connection between the rifle in the living room and the drugs found in the bedroom. George also claims that no nexus existed when he was at the front door or under police control and the rifle stashed between a DVD shelf and cabinet.

The State presented evidence that George sold controlled substances from his residence from at least 2017 through 2019. The Harrington .22 rifle was found in the open living room immediately near the front door and the entrance to George's bedroom. DTF located over $40,000 and the controlled substances in

25

that bedroom. The firearm was easily accessible and readily available for use during drug transactions. These factors combine to establish a nexus between George, the rifle, and possession with intent. Sufficient evidence supports the firearm enhancements.

<u>Confrontation and Cross-Examination on Firearm Operability</u>

During trial, George sought to cross-examine the State's witness, Detective Chris Rathbun, on the operability of the Harrington .22 rifle. The trial court denied the request, stating that the operability of the rifle was not relevant. George contends the trial court violated his right to confrontation by preventing cross-examination about the operability of the Harrington .22 rifle.

We review a trial court's decision to admit or exclude evidence for abuse of discretion. <u>State v. Gunderson</u>, 181 Wn.2d 916, 922, 337 P.3d 1090 (2014). A trial court abuses its discretion when a decision is manifestly unreasonable or based on untenable grounds or reasons. <u>Id.</u> We review a court's limitation on the scope of cross-examination for manifest abuse of discretion. <u>State v. Darden</u>, 145 Wn.2d 612, 619, 41 P.3d 1189 (2002).

Both the federal and state constitutions guarantee the right to confront and cross-examine adverse witnesses. U.S. CONST. amend VI; WASH. CONST. art. I, § 22; <u>Darden</u>, 145 Wn.2d at 620. Yet the right to cross-examination is not absolute. <u>Id.</u> "The confrontation right and associated cross-examination are limited by general considerations of relevance." <u>Darden</u>, 145 Wn.2d at 621. The evidence must be relevant. <u>Id.</u>

As discussed above, the issue of the Harrington .22 rifle's operability was not relevant to the charges for unlawful possession of a firearm or the firearm enhancements. Because operability was not relevant, evidence on the issue was not admissible. ER 402. The trial court's denial of the request to cross-examine the witness on this issue did not violate George's right to confrontation.

Unanimity Instruction

George asserts that the firearm enhancements must be reversed because the State failed to give a unanimity instruction as to which firearm supported the enhancements. We disagree.

Washington criminal defendants have a constitutional right to a unanimous jury verdict. WASH. CONST. art. I, sec. 22. When the prosecution presents evidence of multiple acts of misconduct which could form the basis of a charged count, the State must elect the act to support a conviction or the court must instruct the jury to agree on a specific criminal act. State v. Coleman, 159 Wn.2d 509, 511, 150 P.3d 1126 (2007). "An election or instruction that all 12 jurors must agree that the same underlying act has been proved beyond a reasonable doubt assures a unanimous verdict on one criminal act." Id. at 512.

Whether or not a unanimity instruction was required in a particular case is a question of law reviewed de novo. State v. Lee, 12 Wn. App. 2d 378, 393, 460 P.3d 701, review denied, 195 Wn. 2d 1032, 468 P.3d 622 (2020). A unanimity instruction is not necessary where the State choses to elect an act as the basis for conviction. See State v. Carson, 184 Wn.2d 207, 229, 357 P.3d 1064 (2015). For an election to be effective, the State must tell the jury which act to rely on in

its deliberations. Id. at 227. Without either an election or a unanimity instruction in a multiple acts case, omission of the unanimity instruction is presumed prejudicial. Coleman, 159 Wn.2d at 512.

Here, the prosecutor clearly elected the Harrington .22 rifle as the basis for the firearm enhancements. During closing, the State told the jury, "And whether or not the defendant was armed with a firearm at the time he committed counts 1, 2, and 3. Remember, the bolt action rifle was right at the entrance to his bedroom." Additionally, George conceded in his closing argument that the Harrington .22 rifle was the only firearm that could support the enhancement. Therefore, a unanimity instruction was unnecessary. Carson, 184 Wn.2d at 227-28.

## Cumulative Error

George asserts that cumulative error denied him a fair trial. George claims that the combination of the illegally seized evidence, admissibility of prejudicial statements, right to confrontation violation, the trial court's ruling limiting the scope of the questioning about firearm operability, biased jury selection, inflammatory arguments, and lack of a unanimity instruction require a reversal.

"Under the cumulative error doctrine, a defendant may be entitled to a new trial when cumulative errors produce a trial that is fundamentally unfair." State v. Emery, 174 Wn.2d 741, 766, 278 P.3d 653 (2012). "The doctrine does not apply where the errors are few and have little or no effect on the trial's outcome." State v. Venegas, 155 Wn. App. 507, 520, 228 P.3d 813 (2010).

28

Here, there was only one error, which had little or no effect on the trial's outcome.  Therefore, the cumulative error doctrine does not apply.

Sentencing-Related Challenges

George asserts three errors regarding sentencing.  He contends that (1) one drug offense was incorrectly scored as a separate point instead of being properly treated as same criminal conduct, (2) three firearm enhancements were imposed for same criminal conduct in violation of the right against double jeopardy, and (3) that he was sentenced by a biased judge who deprived him of effective counsel at sentencing.

1) Offender Score

In calculating George's offender score, the trial court determined that two convictions for possession with intent to deliver constituted the same criminal conduct and scored those two offenses as a single point.  The State concedes that all of George's possession convictions should be considered the same criminal conduct.  Additionally, the State concedes that the simple possession conviction must be vacated under Blake.  We accept the State's concessions and remand to the trial court to vacate the simple possession conviction and resentence George with a corrected offender score.

2) Double Jeopardy

George asserts that because his possession with intent to deliver offenses were all the same criminal conduct involving, the imposition of multiple firearm enhancements violates double jeopardy under the United States Constitution

Amendment V and the Washington State Constitution article I, section 9. We disagree.

The double jeopardy clause of the Fifth Amendment to the United States Constitution provides that "no person shall be 'subject for the same offence to be twice put in jeopardy of life or limb.' " In re Pers. Restraint of Borrero, 161 Wn.2d 532, 541, 167 P.3d 1106 (2007) (quoting U.S. CONST. amend. V). Under Article I, section 9 of The Washington State Constitution "[n]o person shall be . . . twice put in jeopardy for the same offense." Id. (quoting WASH. CONST. art. IX § 9). Double jeopardy claims are questions of law that are reviewed de novo. State v. Hughes, 166 Wn.2d 675, 681, 212 P.3d 558 (2009).

The U.S. Supreme Court in Missouri v. Hunter found that "[i]f the legislature intends to impose multiple punishments, their imposition does not violate the double jeopardy clause." State v. Kelley, 168 Wn.2d 72, 77, 226 P.3d 733, 779 (2010); Missouri v. Hunter, 459 U.S. 359, 368, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983). The court reasoned that, "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." Id. at 366. So, essentially, "[a] legislature can enact statutes imposing, in a single proceeding, cumulative punishments for the same conduct." Kelley, 168 Wn.2d at 77.

The Sentencing Reform Act of 1981[11] (SRA) specifically allows for firearm enhancements as cumulative punishment. Id. at 78-80. The Washington

---

[11] Ch. 9.94A RCW.

Supreme Court has considered the issue of multiple firearm enhancements for convictions that are same criminal conduct in State v. Mandanas. 168 Wn.2d 84, 90, 228 P.3d 13 (2010) aff'd 163 Wn. App. 712, 262 P.3d 522 (2011). The court concluded that enhancements must be applied to all eligible offenses including those that amount to the same criminal conduct. Id. The sentence enhancement statute clearly anticipates the possibility of multiple enhancements for multiple offenses. Id. at 88-89. As a result, George's firearm enhancements do not violate double jeopardy.

3)  Biased Judge

As a final matter, George claims that the trial judge was biased against him, and thus, any further proceedings must take place before a different judge. We disagree.

"The trial court is presumed to perform its functions without bias or prejudice." State v. Hecht, 2 Wn. App. 2d 359, 369, 409 P.3d 1146 (2018). " 'The party moving for recusal must demonstrate prejudice.' " State v. Perala, 132 Wn. App. 98, 111, 130 P.3d 852 (2006) (quoting In re Parentage of J.H., 112 Wn. App. 486, 496, 49 P.3d 154 (2002). " 'Casual and unspecific allegations of judicial bias provide no basis for appellate review.' " Hecht, 2 Wn. App. 2d at 369 (quoting Rich v. Starczewski, 29 Wn. App. 244, 246, 628 P.2d 831 (1981)). We inquire whether as an objective matter, the average judge in their position is likely to be neutral or whether an unconstitutional potential for bias exists. State v. Blizzard, 195 Wn. App. 717, 727, 381 P.3d 1241 (2016).

First, George contends that the trial judge exhibited bias by failing to grant a continuance at sentencing and thereby depriving George of effective assistance of counsel.

Defendants are guaranteed effective counsel at sentencing. State v. Bandura, 85 Wn. App. 87, 97, 931 P.2d 174 (1997). George's counsel who appeared at the sentencing hearing requested a continuance to allow for trial counsel to appear but did not file a motion. The court had given George's counsel about one month to prepare for sentencing, which is a reasonable time to consult with George and make adequate preparations. In fact, counsel who appeared at George's sentencing hearing had previously worked on the trial brief and some pretrial motions. It was within the court's discretion to require the case proceed as scheduled and the mere fact that the court denied the continuance does not show impartiality.[12] George has not provided any evidence that judicial bias improperly influenced the court's decision to deny the continuance.

George also contends that the failure to grant a continuance demonstrates bias because the trial court prejudged the outcome of another pending criminal trial and intended for George to receive consecutive sentences. But as described above, the trial court had adequate reasons to deny the continuance. There was no evidence of bias.

Finally, George claims the trial judge exhibited bias by relying on unproven facts in sentencing him. Specifically, the judge noted that George was dealing

---

[12] The State concedes that the trial court should have allowed the continuance.

high quantities stating, "[W]ith the volume you were dealing, I can only imagine the number of people that you hurt." The court sentenced George within the standard range. This is within the court's discretion and does not demonstrate bias. See State v. Ammons, 105 Wn.2d 175, 181, 713 P.2d 719 (1986). George does not demonstrate bias warranting remand to a different judge.

We affirm George's convictions except for the simple possession charge, accept the State's concessions, and remand for resentencing consistent with this opinion.

_Smith, A.C.J._

WE CONCUR:

_Mann, J._        _Dwyer, J._